**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

DISTRICT OF NEW JERSEY

Case number *(if known)* _____   Chapter   **11**

☐ Check if this is an amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

**04/25**

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.**

| | | |
|---|---|---|
| 1. | **Debtor's name** | **FreshRealm, Inc.** |
| 2. | **All other names debtor used in the last 8 years** <br> Include any assumed names, trade names and *doing business as* names | **FKA  FreshRealm LLC** |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **46-1778505** |

4. **Debtor's address**

| **Principal place of business** | **Mailing address, if different from principal place of business** |
|---|---|
| **901 W Linden Ave.** <br> **Linden, NJ 07036** <br> Number, Street, City, State & ZIP Code | <br><br> P.O. Box, Number, Street, City, State & ZIP Code |
| **Union** <br> County | **Location of principal assets, if different from principal place of business** <br><br> Number, Street, City, State & ZIP Code |

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | **https://freshrealm.com** |

6. **Type of debtor**

■ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

Debtor **FreshRealm, Inc.** _____  Case number (*if known*) _____
          Name

**7.  Describe debtor's business**   A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See
http://www.uscourts.gov/four-digit-national-association-naics-codes.

_____**3119**_____

**8.  Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7

☐ Chapter 9

■ Chapter 11. *Check **all** that apply*:

☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,424,000 (amount subject to adjustment on 4/01/28 and every 3 years after that).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11 (Official Form 201A)* with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9.  Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**
If more than 2 cases, attach a separate list.

■ No.
☐ Yes.

District _____ When _____ Case number _____
District _____ When _____ Case number _____

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

☐ No
■ Yes.

| Debtor | **FreshRealm, Inc.** | | Case number (*if known*) | |
|---|---|---|---|---|
| | Name | | | |

List all cases. If more than 1, attach a separate list

| | Debtor | **See Rider 1 attached** | Relationship | |
|---|---|---|---|---|
| | District | **New Jersey** | When | Case number, if known |

**11. Why is the case filed in *this district?***

*Check all that apply:*

■ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☐ No

■ Yes.  Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

■ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?**    **901 W Linden Ave.**
**Linden, NJ, 07036-0000**

Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No

■ Yes.  Insurance agency    **Woodruff Sawyer**

Contact name _____

Phone _____

**Statistical and administrative information**

**13. Debtor's estimation of available funds**

.    *Check one:*

☐ Funds will be available for distribution to unsecured creditors.

■ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14. Estimated number of creditors**

☐ 1-49
☐ 50-99
☐ 100-199
☐ 200-999

■ 1,000-5,000
☐ 5001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☐ More than100,000

**15. Estimated Assets**

☐ $0 - $50,000
☐ $50,001 - $100,000
☐ $100,001 - $500,000
☐ $500,001 - $1 million

☐ $1,000,001 - $10 million
☐ $10,000,001 - $50  million
☐ $50,000,001 - $100 million
■ $100,000,001 - $500 million

☐ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

**16. Estimated liabilities**

☐ $0 - $50,000
☐ $50,001 - $100,000
☐ $100,001 - $500,000
☐ $500,001 - $1 million

☐ $1,000,001 - $10 million
☐ $10,000,001 - $50  million
☐ $50,000,001 - $100 million
■ $100,000,001 - $500 million

☐ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

Debtor   **FreshRealm, Inc.**                                    Case number (*if known*)
         Name

| | |
|---|---|
| | **Request for Relief, Declaration, and Signatures** |

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **April 27, 2026**
              MM / DD / YYYY

**X** **/s/ Bryan Fleming**                              **Bryan Fleming**
Signature of authorized representative of debtor          Printed name

Title   **Chief Financial Officer**

**18. Signature of attorney**

**X** **/s/ Michael D. Sirota**                  Date **April 27, 2026**
Signature of attorney for debtor                      MM / DD / YYYY

**Michael D. Sirota**
Printed name

**Cole Schotz P.C.**
Firm name

**Court Plaza North**
**25 Main Street**
**Hackensack, NJ 07601**
Number, Street, City, State & ZIP Code

Contact phone   **201-489-3000**      Email address   **msirota@coleschotz.com**

**014321986 NJ**
Bar number and State

In re   **FreshRealm, Inc.**                                         Case No.   _____
                                    Debtor(s)

## FORM 1. VOLUNTARY PETITION
### Attachment A

**Question 10.**

**Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

**Yes**

**List of Related Cases:**

**FreshRealm Holdings, Inc.**      **Affiliate**

**FreshRealm HR LLC**      **Affiliate**

**FreshRealm Inc.**      **Affiliate**

**FreshRealm Texas LLC**      **Affiliate**

**IHEC LLC**      **Affiliate**

**Question 12.**

**Does the debtor own or have possession of any real property or personal property
that needs immediate attention?**

**Yes - It includes perishable goods or assets that could quickly deteriorate or lose value without attention
(for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other
options).**

**Where is the property located:**

**901 W Linden Ave., Linden, NJ 07036**

**3100 N Dallas Ave., Lancaster, TX 75134**

**2900 N MacArthur Dr., Tracy, CA 95376**

United States Bankruptcy Court for the:

**District of New Jersey**
(State)

Case No. (i*if known)*: _____ Chapter __11__

☐ Check if this is an
amended filing

**Rider 1**
**Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor**

On the date hereof, each of the entities listed below (collectively, the "Debtors") filed a petition in the United States Bankruptcy Court for the District of New Jersey for relief under chapter 11 of title 11 of the United States Code.  The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of FRESHREALM, INC.

- FRESHREALM, INC.
- FRESHREALM HOLDINGS, INC.
- IHEC, LLC
- FRESHREALM HR, LLC
- FRESHREALM TEXAS, LLC

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| FRESHREALM, INC., | Case No. 26-[●] ([●]) |
| Debtor. | |

**LIST OF EQUITY SECURITY HOLDERS[1]**

| Equity Holder | Address of Equity Holder | Fully Diluted Common Shares | Percentage of Equity Held |
|---|---|---|---|
| FreshRealm Holdings, Inc. | 901 W Linden Ave, Linden, NJ 07036 | 100.00 | 50.003% |
| Faranord (US) III Ptd Ltd | Faranord (US) Ptd Ltd, c/o Faranord (US) PTE Ltd, 168 Robinson Road, #37-01, Capital Tower, Singapore 068912 | 89.99 | 44.997% |
| Birch Grove Investments LLC | Birch Grove Investments LLC, c/o Birch Grove Capital LP, 55 Hudson Yards, New York, NY 10001 | 8.00 | 4.000% |
| Swiss Capital Co-Investments Private Offshore SP | 4275 Executive Square #500 La Jolla, CA 92037 | 2.00 | 1% |

---

[1] This list serves as the disclosure required to be made by the debtor pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure. All equity positions listed indicate the record holder of such equity as of the date of commencement of the chapter 11 case.

2

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| FRESHREALM, INC., | Case No. 26-[●] ([●]) |
| Debtor. | |

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are parent corporations or publicly held corporations that own 10% or more of any class of the debtor's stock:

**CORPORATE OWNERSHIP STATEMENT**

| **Shareholder** | **Approximate Percentage of Shares Held** |
|---|---|
| FreshRealm Holdings, Inc. | 50.003% |

3

**Fill in this information to identify the case:**

Debtor name: FreshRealm, Inc., et al.

United States Bankruptcy Court for the: District of New Jersey

Case number (If known):

☐ Check if this is an amended filing

Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders
12/15

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider*, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
|---|---|---|---|---|---|---|
| 1 FedEx<br>942 Shady Grove Rd S<br>Memphis, TN 38120<br>United States | Gina Adams<br>Executive Vice President<br>gfadams@fedex.com<br>202-237-0121 | Trade Payable | | | | $7,208,754 |
| 2 Bristlecone Incorporated<br>10 Almaden Blvd<br>San Jose, CA 95113<br>United States | Rajesh Kalra<br>Vice President<br>rajesh.kalra@bristlecone.com<br>408-571-8733 | Trade Payable | | | | $3,084,327 |
| 3 Lasership Inc AKA OnTrac Logistics, Inc.<br>1912 Woodford Rd #2<br>Vienna, VA 22182<br>United States | Jason Peel<br>CFO<br>jpeel@lasership.com<br>925-766-7229 | Trade Payable | | | | $2,453,978 |
| 4 Elevated Resources, Inc.<br>3990 Westerly Place, Suite 270<br>Newport Beach, CA 92660<br>United States | Rob Morris<br>CEO & Founder<br>rmorris@elevatesaas.com<br>949-584-7760 | Trade Payable | | | | $2,342,948 |
| 5 Elberta Logistics International LLC<br>1682 Metropolitan Circle<br>Tallahassee, FL 32308<br>United States | Michael Crosby<br>COO<br>michael.crosby@elberta.net<br>912-660-8059 | Trade Payable | | | | $2,027,883 |
| 6 Ocean Enterprises, LLC<br>700 E. Ogden Ave.<br>Westmont, IL 60559<br>United States | Kelly Arora<br>Director<br>karora@oneworldventures.com<br>716-316-4038 | Trade Payable | | | | $1,041,300 |
| 7 Total Quality Logistics LLC<br>4270 Ivy Pointe Blvd.<br>Cincinnati, OH 45245<br>United States | Kerry Byrne<br>President<br>kbyrne@tql.com<br>513-321-7222 | Trade Payable | | | | $943,202 |
| 8 Prologis LP<br>One Meadowlands Plaza<br>Suite 100<br>East Rutherford, NJ 07073<br>United States | Carter Andrus<br>COO<br>candrus@prologis.com<br>847-292-3901 | Trade Payable | | | | $881,351 |
| 9 Polsinelli PC<br>900 W 48th Place<br>Suite 900<br>Kansas City, MO 64112<br>United States | Rick Jordan<br>Co-Chair<br>rjordan@polsinelli.com<br>435-731-5605 | Trade Payable | | | | $871,820 |
| 10 Dayforce US, Inc<br>3311 East Old Shakopee Road<br>Suite 400<br>Minneapolis, MN 55425-1640<br>United States | David Ossip<br>CEO & Founder<br>david.ossip@ceridian.com<br>416-402-0415 | Trade Payable | | | | $843,523 |
| 11 PSEG<br>80 Park Pl<br>Newark, NJ 07102<br>United States | Scott Jennings<br>COO<br>scott.jennings@psegliny.com<br>914-830-2469 | Trade Payable | | | | $781,072 |
| 12 Emmi Roth USA Inc<br>1800 Williams Dr.<br>Stoughton, WI 53589<br>United States | Nate Kieper<br>Vice President of Finance<br>nate.kieper@emmirothusa.com<br>715-675-3311 | Trade Payable | | | | $763,572 |
| 13 RR Donnelley<br>227 W Monroe Street<br>Chicago, IL 60606<br>United States | Thomas J. Quinlan, III<br>CEO<br>tom.quinlan@rrdonnelley.com<br>845-674-6097 | Trade Payable | | | | $684,652 |
| 14 Pelton Shepherd Industries Inc.<br>3120 W. March Lane<br>Stockton, CA 95219<br>United States | Tim Shepherd<br>CEO<br>tim@peltonshepherd.com<br>209-712-5569 | Trade Payable | | | | $650,090 |
| 15 IEH Laboratories and Consulting Group<br>15300 Bothell Way NE<br>Lake Forest Park, WA 98155<br>United States | David Crowe<br>Counsel<br>dcrowe@iehinc.com<br>206-522-5432 | Trade Payable | | | | $626,019 |
| 16 BM2 Freight Services, Inc.<br>50 E Rivercenter Blvd<br>Suite 525<br>Covington, KY 41011<br>United States | Jeff Mason<br>Principal<br>jmason@bm2freight.com<br>949-375-7069 | Trade Payable | | | | $625,147 |
| 17 The Jam Stand LLC<br>5 East Stow Road<br>Marlton, NJ 08053<br>United States | Sabrina Valle<br>Co-Founder<br>sabrina@mighty-picnic.com<br>917-880-7612 | Trade Payable | | | | $620,677 |
| 18 Armanino Foods of Distinction Inc<br>30588 San Antonio Street<br>Hayward, CA 94544<br>United States | Deanna Jurgens<br>President & CEO<br>djurgens@armaninofoods.com<br>479-616-0477 | Trade Payable | | | | $571,930 |
| 19 Arma Container Corp<br>65 N Industry Ct.<br>Deer Park, NY 11729<br>United States | Bruce Margolis<br>President<br>bmargolis@armacontainer.com<br>631-724-7570 | Trade Payable | | | | $556,483 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 20 | Noordzee USA LLC 15333 Culver Drive Suite 340 #136 Irvine, CA 92604 United States | Rein Kramer CEO rkramer@noordzeeinternational.com +31 6 57310644 | Trade Payable | | | | $506,627 |
| 21 | Calabro Cheese Corporation 580 Coe Avenue East Haven, CT 06512 United States | Christopher Klemensowicz CEO christopher.klemensowicz@calabrocheese.com 973-751-1754 | Trade Payable | | | | $474,181 |
| 22 | 302 Airport Dr LLC 325 W Main St Belleville, IL 62220 United States | Greg Lorenzo COO glorenzo@fwresults.com 716-465-4066 | Trade Payable | | | | $464,900 |
| 23 | Servicemaster A Plus Restoration 9960 Indiana Ave Suite 11 Riverside, CA 92503 United States | Bobby Moise President bobby@servicemasteraplus.com 951-367-5288 | Trade Payable | | | | $463,629 |
| 24 | CSC Leasing Co. 6802 Paragon Place Richmond, VA 23230 United States | John Corey CEO jcorey@cscleasing.com 804-673-1000 | Trade Payable | | | | $449,525 |
| 25 | Custom Culinary Inc. 2505 S. Finley Rd. Lombard, IL 60148 United States | Ben Wexler President bwexler@customculinary.com 219-689-1324 | Trade Payable | | | | $440,284 |
| 26 | Trident Seafood Corp 5303 Shilshole Ave Seattle, WA 98107 United States | Joseph Bundrant CEO joeb@tridentseafoods.com 425-218-7501 | Trade Payable | | | | $386,620 |
| 27 | HelloFresh 28 Liberty Street 10th Floor New York, NY 10005 United States | Adam Kalikow Managing Director adam.kalikow@hellofresh.com 914-400-9181 | Indemnification Claim | Contingent, Unliquidated, Disputed | | | Undetermined |
| 28 | Blue Apron, LLC 28th Liberty St New York, NY 10005 United States | Tony Hoggett COO tony@wonder.com 512-483-1838 | Customer Claim Trade Payable | Contingent, Unliquidated, Disputed | | | Undetermined |
| 29 | Marley Spoon 519 8th Ave New York, NY 10018 United States | David Guzman CFO david.guzman@marleyspoon.com 646-234-1508 | Customer Claim | Contingent, Unliquidated, Disputed | | | Undetermined |
| 30 | Nate's Fine Foods 8880 Industrial Avenue Roseville, CA 95678 United States | Nathan Barker Owner and CEO nate@natesfinefoods.com 310-897-2690 | Trade Payable | Contingent, Unliquidated, Disputed | | | Undetermined |

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
<tr><td>Debtor name</td><td><strong>FreshRealm, Inc.</strong></td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>DISTRICT OF NEW JERSEY</td></tr>
<tr><td>Case number (if known)</td><td></td></tr>
</table>

☐ Check if this is an amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐    *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☐    *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☐    *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☐    *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☐    *Schedule H: Codebtors* (Official Form 206H)
☐    *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐    Amended *Schedule* _____
■    *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
■    Other document that requires a declaration    **List of Equity Security Holders; Corporate Ownership Statement**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **April 27, 2026**          X **/s/ Bryan Fleming**
                                                   Signature of individual signing on behalf of debtor

                                                   **Bryan Fleming**
                                                   Printed name

                                                   **Chief Financial Officer**
                                                   Position or relationship to debtor

## RESOLUTIONS OF THE BOARD OF DIRECTORS

### Commencement and Prosecution of Chapter 11 Cases

**WHEREAS**, the Board of Directors (the "**Board**") of FreshRealm, Inc., a Delaware corporation (the "**Company**") has reviewed and considered the financial and operational condition of the Company and the Company's business on the date hereof, including the historical performance of the Company, the assets of the Company, the current and long-term liabilities of the Company, the market for the Company's assets, and credit market conditions; and

**WHEREAS**, the Board, in considering the Company's existing relationships with its customers, surveyed potential restructuring options for the Company, including restructuring or refinancing the Company's debt, seeking additional debt or equity capital, reducing or delaying the Company's business activities and strategic initiatives, or selling assets, other strategic transactions and/or other measures, and has considered presentations by management as well as financial and legal advisors to the Company (such advisors in such applicable capacities, collectively, the "**Advisors**") regarding the assets, liabilities and liquidity situation of the Company, the strategic alternatives available to the Company and the impact of the foregoing on the Company's business, prospects and enterprise value; and

**WHEREAS**, the Board has reviewed, had the opportunity to consult with, and ask questions of, the management and Advisors, and fully considered each of the strategic alternatives available to the Company, including the relative risks and benefits of pursuing a bankruptcy proceeding under the provisions of chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**").

**NOW, THEREFORE, BE IT RESOLVED**, that, in the judgment of the Board, it is desirable and in the best interests of the Company, its creditors, stockholders, and other interested parties, that a voluntary petition (the "**Petition**") be filed by the Company in the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**") commencing a case (the "**Chapter 11 Case**") under the provisions of chapter 11 of the Bankruptcy Code; and it is further

**RESOLVED**, that, the Company is hereby authorized, and each Authorized Officer (as defined below)  shall be, and hereby is, authorized and directed on behalf of the Company, to seek to have the Chapter 11 Case jointly administered by the Bankruptcy Court with the separate cases commenced by its affiliated debtors, under Chapter 11 of the Bankruptcy Code (the respective Chapter 11 Case, together with such other separate cases, the "**Chapter 11 Cases**"); and it is further

**RESOLVED**, that the Authorized Officers of the Company, be, and each of them, acting alone or in any combination, hereby is, authorized, directed, and empowered, in the name of and on behalf of the Company, to execute, acknowledge, deliver, and verify the Petition and to cause the same to be filed with the Bankruptcy Court at such time as such Authorized Officer may determine; and it is further

**RESOLVED**, that, the Company is hereby authorized, and each Authorized Officer shall be, and hereby is, authorized and empowered, with full power of delegation, on behalf of and in the name of the Company, to execute, verify and/or file, or cause to be filed and/or executed or

verified (or direct others to do so on their behalf as provided herein), and to amend, supplement or otherwise modify from time to time, all necessary or appropriate documents, including, without limitation, petitions, affidavits, schedules, motions, lists, applications, pleadings and other documents, agreements and papers, including all credit documents, and to take any and all actions that each Authorized Officer deems necessary or appropriate, each in connection with the Chapter 11 Cases; and it is further

RESOLVED, that the Authorized Officers be, and each of them, acting alone or in any combination, hereby is, authorized, directed, and empowered, from time to time in the name and on behalf of the Company, as a debtor and debtor in possession under the Bankruptcy Code, to perform the obligations of the Company under the Bankruptcy Code, with all such actions to be performed in such manner, and all such certificates, instruments, guaranties, notices, and documents to be executed and delivered in such form, as any Authorized Officer performing or executing the same shall approve, and the performance or execution thereof by such Authorized Officer shall be conclusive evidence of the approval thereof by such Authorized Officer and by the Company; and it is further

RESOLVED, that the Company is hereby authorized, and each Authorized Officer shall be, and hereby is, authorized and empowered, on behalf of and in the name of the Company, to enter into such forbearance agreements, waivers, amendments or modifications, or other supplements relating to the Company's existing indebtedness as may be deemed necessary or appropriate by such Authorized Officer.

**Retention of Professionals**

RESOLVED, that the law firm of Cole Schotz P.C. ("**Cole Schotz**") be, and hereby is, authorized, directed, and empowered to represent the Company as restructuring and bankruptcy counsel to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights, including the preparation of pleadings and filings in the Chapter 11 Cases; and in connection therewith, the Authorized Officers be, and each of them, acting alone or in any combination, hereby is, authorized, directed, and empowered, on behalf of and in the name of the Company to execute appropriate retention agreements, pay appropriate retainers prior to the filing of the Chapter 11 Cases, and to cause to be filed an appropriate application for authority to retain the services of Cole Schotz; and it is further

RESOLVED, that financial advisory firm of Alvarez & Marsal North America, LLC ("**A&M**") be, and hereby is, authorized, directed, and empowered to represent the Company as financial restructuring adviser to represent and assist the Company in carrying out its duties under the Bankruptcy Code and to take any and all actions to advance the Company's rights and obligations in connection with the Chapter 11 Cases; and in connection therewith, the Authorized Officers be, and each of them, acting alone or in any combination, hereby is, authorized, directed, and empowered, on behalf of and in the name of the Company, to execute appropriate retention agreements, pay appropriate retainers, if required, prior to the filing of the Chapter 11 Cases, and to cause to be filed an appropriate application for authority to retain the services of A&M; and it is further

**RESOLVED**, that investment banking firm of Rothschild & Co. ("**Rothschild**") be, and hereby is, authorized, directed, and empowered to represent the Company as investment banker to represent and assist the Company in carrying out its duties under the Bankruptcy Code and to take any and all actions to advance the Company's rights and obligations in connection with the Chapter 11 Cases; and in connection therewith, the Authorized Officers be, and each of them, acting alone or in any combination, hereby is, authorized, directed, and empowered, on behalf of and in the name of the Company, to execute appropriate retention agreements, pay appropriate retainers, if required, prior to the filing of the Chapter 11 Cases, and to cause to be filed an appropriate application for authority to retain the services of Rothschild; and it is further

**RESOLVED**, that Kroll Restructuring Administration LLC ("**Kroll**" and together with Cole Schotz, A&M and Rothschild, collectively, the "**Professionals**") be, and hereby is, authorized, directed, and empowered to serve as the notice, claims, solicitation, balloting, and administrative agent in connection with the Chapter 11 Cases; and in connection therewith, the Authorized Officers be, and each of them, acting alone or in any combination, hereby is, authorized, directed, and empowered, on behalf of and in the name of the Company to execute appropriate retention agreements, pay appropriate retainers, if required, prior to the filing of the Chapter 11 Cases, and to cause to be filed an appropriate application for authority to retain the services of Kroll; and it is further

**RESOLVED**, that the Authorized Officers be, and each of them, acting alone or in any combination, hereby is, authorized, directed, and empowered, on behalf of and in the name of the Company to employ any other individual and/or firm as professionals, consultants, financial advisors, or investment bankers to the Company as are deemed necessary to represent and assist the Company in carrying out its duties under the Bankruptcy Code and achieving a successful reorganization, and in connection therewith, the Authorized Officers be, and each of them, acting alone or in any combination, hereby is, authorized, directed, and empowered, on behalf of and in the name of the Company to execute appropriate retention agreements, pay appropriate retainers prior to the filing of the Chapter 11 Cases, and to cause to be filed an appropriate application for authority to retain the services of such firms.

## Post-Petition Financing/ "DIP" Financing Term Sheet

**WHEREAS**, the Company, as debtor and debtor in possession under the Chapter 11 Case, intends to obtain senior secured, superpriority, postpetition financing and the use of cash collateral (the "**DIP Financing**") on the terms and conditions of the proposed debtor-in-possession financing term sheet, substantially in the form presented to the Board on or prior to the date hereof and as may be further approved, modified or amended by any Authorized Officer (together with any ancillary documents, the "**DIP Facility Term Sheet**") between the Company as borrower, the DIP Lenders (as identified on the DIP Facility Term Sheet, (the "**DIP Lenders**")) and BGC Lender Rep LLC, as administrative agent and collateral agent (the "**DIP Agent**"), and other such other agents and entities from time to time party thereto, and to grant to the DIP Agent and for the benefit of the DIP Lenders security interests in and liens with priority under section 364(c) of the Bankruptcy Code upon some, any, or all of the Company's assets; and

**WHEREAS**, the Company will obtain benefits from the incurrence of the loans, issuance of any letters of credit and guaranties, and any and all related transactions contemplated under a

DIP financing agreement consistent with the terms set forth in the DIP Facility Term Sheet (collectively, the "**DIP Financing Transactions**"), which are necessary and appropriate to the conduct, promotion and attainment of the business of the Company; and it is further

**RESOLVED**, that the Company is authorized to obtain DIP Financing and to grant to the DIP Agent and for the benefit of the DIP Lenders security interests in and liens with priority under section 364(c) of the Bankruptcy Code upon some, any, or all of the Company's assets on terms and conditions set forth in the DIP Facility Term Sheet, with such changes, additions, and modifications thereto as an Authorized Officer executing the same shall approve, such approval to be conclusively evidenced by a Authorized Officer's execution and delivery thereof; and it is further

**RESOLVED**, that the Authorized Officers be, and each of them, acting alone or in any combination, hereby is, authorized, directed, and empowered, on behalf of and in the name of the Company, to secure the payment and performance of any post-petition financing by (i)(a) pledging or granting liens or mortgages on, or security interests in, all or any portion of the Company's assets, whether now owned or hereafter acquired, and (b) causing any subsidiary of the Company, if any, to pledge or grant liens or mortgages on, or security interests in, all or any portion of such subsidiary's assets, whether now owned or hereafter acquired, and (ii) entering into or causing to be entered into, including, without limitation, causing any subsidiaries of the Company to enter into, such credit agreements, guarantees, other debt instruments, security agreements, pledge agreements, control agreements, inter-creditor agreements, mortgages, deeds of trust, and other agreements as are necessary, appropriate, or desirable to effectuate the intent of, or matters reasonably contemplated or implied by, this resolution in such form, covering such collateral and having such other terms and conditions as are approved or deemed necessary, appropriate, or desirable by the Authorized Officer executing the same, the execution thereof by such Authorized Officer to be conclusive evidence of such approval or determination; and it is further

**RESOLVED**, that, the Company is hereby authorized, and each Authorized Officer shall be, and hereby is, authorized and empowered, on behalf of and in the name of the Company, to the extent applicable, to obtain the use of cash collateral, in such amounts and on such terms as may be agreed by any Authorized Officer, including the grant of replacement liens, as is reasonably necessary for the continuing affairs of the Company.

<u>**Settlement Agreement**</u>

**WHEREAS**, Blue Apron, LLC, a Delaware limited liability company ("**Blue Apron**"), Blue Apron Holdings, Inc. ("**BA Holdings**") and the Company entered into an Asset Purchase Agreement on June 9, 2023 (the "**2023 APA**") whereby Blue Apron sold and assigned, and the Company purchased, and took assignment of, licensed or leased, certain assets and certain contracts related to manufacturing facilities located at 901 W. Linden Avenue, Linden, New Jersey 07036 (the "**NJ Facility**") and at 3151 Regatta Blvd. B60, Richmond, California 94804 (the "**CA Facility**"); and

**WHEREAS**, the transaction contemplated by the 2023 APA closed on June 9, 2023 (the "**Transaction Closing Date**"). Since the Transaction Closing Date: (i) the Company manufactures and packages certain products for Blue Apron at the CA Facility, the NJ Facility and the

Docusign Envelope ID: 4185G9CF-26D3-82A5-817D-8CCED18CF378

Company's other facilities in operation pursuant to the terms of the Production and Fulfillment Agreement, dated June 9, 2023 (the "**PFA**"), (ii) the Company provides storage, development and fulfillment services for the products as outlined in, and pursuant to the terms of, the PFA; and (iii) the Company and Blue Apron also entered into a transition services agreement ("**Initial TSA**"), a technology license agreement ("**TLA**"), a Sublease Agreement and Assignment and Assumption Agreement for each of the NJ Facility and CA Facility, respectively (the "**Subleases**"), and a "Blue Apron" brand retail license agreement ("**License Agreement**" and together with the PFA, Initial TSA, TLA and Subleases shall be referred to herein collectively as, the "**Blue Apron Agreements**"); and

WHEREAS, certain disputes arose regarding the Company's obligations as set forth in the Blue Apron Agreements; and

WHEREAS, to resolve all disputes arising out of the Blue Apron Agreements, the Company desires to enter into that certain Settlement Agreement, substantially in the form presented to the Board on or prior to the date hereof and as may be further approved, modified or amended by any Authorized Officer (together with any ancillary documents, the "**Settlement Agreement**") between the Company and Blue Apron; and

WHEREAS, as the Company will obtain benefits by entering into the Settlement Agreement, it is in the best interests of the Company to enter into the Settlement Agreement and consummate the transactions contemplated thereby; and it is

RESOLVED, that the Company is authorized to enter into the Settlement Agreement on terms and conditions set forth therein, with such changes, additions, and modifications thereto as an Authorized Officer executing the same shall approve, such approval to be conclusively evidenced by an Authorized Officer's execution and delivery thereof.

**Transition Services Agreement**

WHEREAS, in connection with the Settlement Agreement, the Company desires to provide certain transition services on the terms and conditions set forth in that certain Transition Services Agreement, substantially in the form presented to the Board on or prior to the date hereof and as may be further approved, modified or amended by any Authorized Officer (together with any ancillary documents, the "**TSA**") between the Company, Blue Apron and Misfits Market, Inc.; and

WHEREAS, as the Company will obtain benefits from providing such transition services consistent with the terms set forth in the TSA (the "**TSA Transaction**"), it is in the best interests of the Company to enter into the TSA and consummate the transactions contemplated thereby; and it is further

RESOLVED, that the Company is authorized to enter into the TSA Transaction on terms and conditions set forth in the TSA, with such changes, additions, and modifications thereto as an Authorized Officer executing the same shall approve, such approval to be conclusively evidenced by an Authorized Officer's execution and delivery thereof.

**Asset Purchase Agreement**

**WHEREAS**, in connection with the Settlement Agreement, the Company desires to sell certain of its assets on the terms and conditions set forth in that certain asset purchase agreement, substantially in the form presented to the Board on or prior to the date hereof and as may be further approved, modified or amended by any Authorized Officer (together with any ancillary documents, the "**Asset Purchase Agreement**") between the Company as seller and Misfits Market, Inc. (or its designee), as buyer; and

**WHEREAS**, as the Company will obtain benefits from the sale of certain of its assets consistent with the terms set forth in the Asset Purchase Agreement (the "**Sale Transaction**"), it is in the best interests of the Company to enter into the Asset Purchase Agreement and consummate the transactions contemplated thereby; and it is further

**RESOLVED**, that the Company is authorized to enter into the Sale Transaction on the terms and conditions set forth in the Asset Purchase Agreement, with such changes, additions, and modifications thereto as an Authorized Officer executing the same shall approve, such approval to be conclusively evidenced by an Authorized Officer's execution and delivery thereof.

**General Resolutions**

**RESOLVED**, that the Board hereby adopts any resolution required under the applicable securities laws of any jurisdiction to be adopted in connection with any of the transactions contemplated hereby, if (i) in the opinion of any Authorized Officer, the adoption of such resolution is necessary or advisable, and (ii) the corporate secretary of the Company evidences such adoption by inserting into the minute book of the Company a copy of such resolution, which will thereupon be deemed to have been adopted by the Board with the same force and effect as if specifically presented to a duly called meeting of the Board; and it is further

**RESOLVED**, that, to the extent that the Company serves as the sole member, managing member, general partner, partner or other governing body (collectively, a "**Controlling Company**"), in each case, of any other company, including without limitation, IHEC, LLC, a Delaware limited liability company, FreshRealm HR, LLC, a Delaware limited liability company and FreshRealm Texas, LLC, a Texas limited liability company (a "**Controlled Company**"), each Authorized Officer of the Company and/or each Authorized Officer of a Controlled Company, who may act without the joinder of any other Authorized Officer, be, and hereby is, authorized, empowered and directed in the name and on behalf of such Controlling Company (acting on behalf of such Controlled Company or for such Controlled Company in the capacity set forth above, as applicable), to (i) authorize such Controlled Company to take any action that the Company is authorized to take hereunder and/or (ii) take any action on behalf of such Controlled Company that an Authorized Officer is herein authorized to take on behalf of such Controlling Company; and it is further

**RESOLVED**, that the Chief Executive Officer, Chief Financial Officer, Chief Legal Officer and any other senior executive officer (the "**Authorized Officers**") are hereby each severally authorized in the name of and on behalf of the Company or the applicable Controlled Company to perform any and all acts as may be necessary or desirable to execute, file and deliver all instruments

and other documents contemplated by the foregoing resolutions and to take any and all further action that such person or persons may deem necessary or desirable to effectuate any action authorized by these resolutions and otherwise to carry out the purposes and intentions of the foregoing resolutions; and the execution by any such person or persons of any such documents or the performance by any such person or persons of any such act in connection with the foregoing matters shall conclusively establish his or her authority therefor from the Company and/or the applicable Controlled Company and the approval and ratification by the Company and/or the applicable Controlled Company of the documents so executed and the actions so taken; and it is further

**RESOLVED**, that the Board hereby approves of the transactions discussed herein and all related documents, instruments and agreements relating to such transactions on behalf of the Company and hereby authorizes the Company to approve the transactions, and hereby authorizes the Company to enter into and perform each of their respective obligations in connection with the transactions and all related agreements, documents, instruments and certificates contemplated thereby; and it is further

**RESOLVED**, that any and all actions heretofore taken by any Authorized Officer or any of the Professionals in connection with the Chapter 11 Cases or any proceedings or matters related thereto or contemplated by the foregoing resolutions (including, without limitation, the DIP Financing Transactions, the Settlement Agreement, the TSA Transaction, and the Sale Transaction) are hereby ratified, approved, confirmed and accepted in all respects.

## AUTHORIZED OFFICER'S CERTIFICATE

This Authorized Officer's Certificate (this "**Certificate**") is furnished in connection with that certain chapter 11 petition to be filed on April 27, 2026 (as amended, modified or supplemented from time to time, the "**Petition**") by FreshRealm, Inc., a Delaware corporation (the "**Company**").

The undersigned, being an Authorized Officer of the Company, hereby certifies, solely in his capacity as such and not in his individual capacity and without personal liability, that attached hereto is a true, correct and complete copy of the resolutions adopted by the Board of Directors of the Company at a scheduled meeting on April 27, 2026, in accordance with the bylaws of the Company and the requirements of applicable law, and such resolutions have not been modified, rescinded or amended and are in full force and effect as of the date of this Certificate.

IN WITNESS WHEREOF, the undersigned has executed this certificate on the 27th day of April, 2026.

By: _____

Name: Bryan Fleming
Title: Chief Financial Officer

4/27/2026 | 12:57 PM EDT