**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| FRESHREALM, INC., *et al.*,[1] | ) | Case No. 26-14656 (MEH) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**JOINT CHAPTER 11 PLAN OF FRESHREALM, INC. AND ITS DEBTOR AFFILIATES**

**COLE SCHOTZ P.C.**
Michael Sirota, Esq.
Warren Usatine, Esq.
Ryan Jareck, Esq.
Daniel Harris, Esq.
Matteo Percontino, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:    (201) 489-3000
Facsimile:    (201) 489-1536
Email:        msirota@coleschotz.com
              wusatine@coleschotz.com
              rjareck@coleschotz.com
              dharris@coleschotz.com
              mpercontino@coleschotz.com

*Counsel for the Debtors
and Debtors in Possession*

Dated: July 27, 2026

---

[1]  The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number are: FreshRealm, Inc. (8505); FreshRealm Holdings, Inc. (1563); IHEC, LLC (8728); FreshRealm HR, LLC (7221); and FreshRealm Texas, LLC (8263). The location of FreshRealm, Inc.'s principal place of business and service address is: 901 W Linden Ave, Linden, NJ 07036.

71306/0001-53355255v12

## TABLE OF CONTENTS

**INTRODUCTION** .................................................................................................................1

**ARTICLE I . DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME, AND GOVERNING LAW** .........................................................1
    A.     Defined Terms. .................................................................................................1
    B.     Rules of Interpretation. .....................................................................................23
    C.     Computation of Time. .......................................................................................24
    D.     Governing Law. ................................................................................................24
    E.     Reference to Monetary Figures. .......................................................................24
    F.     Reference to the Debtors or the Wind-Down Debtors. ......................................24
    G.     No Substantive Consolidation; Limited Administrative Consolidation. ............24
    H.     Controlling Document. ......................................................................................25

**ARTICLE II . ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS,
DIP CLAIMS, AND PRIORITY TAX CLAIMS** ..............................................................**25**
    A.     General Administrative Claims ..........................................................................25
    B.     Professional Fee Claims. ...................................................................................26
    C.     DIP Claims. ......................................................................................................28
    D.     Priority Tax Claims. ..........................................................................................28
    E.     Statutory Fees. ..................................................................................................28

**ARTICLE III . CLASSIFICATION AND TREATMENT OF CLAIMS AND
INTERESTS** ...................................................................................................................**29**
    A.     Classification of Claims and Interests. ..............................................................29
    B.     Treatment of Claims and Interests. ...................................................................30
    C.     Special Provision Governing Unimpaired Claims. .............................................35
    D.     Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy
            Code. ................................................................................................................35
    E.     Subordinated Claims. ........................................................................................35
    F.     Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes. ..............35
    G.     Intercompany Interests. .....................................................................................36
    H.     Controversy Concerning Impairment. ...............................................................36
    I.     Insurance. ..........................................................................................................36

**ARTICLE IV . MEANS FOR IMPLEMENTATION OF THE PLAN** ..................................**36**
    A.     Sources of Consideration for Plan Distributions. ...............................................36
    B.     Vesting of Assets. .............................................................................................37
    C.     Wind-Down Debtors. ........................................................................................37
    D.     Plan Administrator. ...........................................................................................38
    E.     Liquidating Trust. .............................................................................................41
    F.     Corporate Existence Post-Effective Date. .........................................................45
    G.     Statutory Committee and Cessation of Fee and Expense Payment. ....................46
    H.     Cancellation of Securities and Agreements. ......................................................46
    I.     Corporate Action. .............................................................................................46

71306/0001-53355255v12

J. Effectuating Documents; Further Transactions. ...............................................................47
K. Section 1146 Exemption. ...............................................................47
L. Causes of Action. ...............................................................47
M. Books and Records. ...............................................................48
N. Insurance Claims: Business Interruption Insurance Claims, D&O Claims and Others. ...............................................................48
O. Section 1145 Exemption. ...............................................................49

**ARTICLE V . TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ...............................................................**49**
A. Assumption and Rejection of Executory Contracts and Unexpired Leases. ...............49
B. Claims Based on Rejection of Executory Contracts or Unexpired Leases. ...............50
C. Insurance Policies. ...............................................................50
D. Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases. ...............................................................51
E. Modifications, Amendments, Supplements, Restatements, or Other Agreements. ...........52
F. Reservation of Rights. ...............................................................52
G. Nonoccurrence of Effective Date. ...............................................................52

**ARTICLE VI . PROVISIONS GOVERNING DISTRIBUTIONS** ...............................................................**52**
A. Timing and Calculation of Amounts to Be Distributed. ...............................................................52
B. Disbursing Agent. ...............................................................53
C. Rights and Powers of the Disbursing Agent. ...............................................................53
D. Delivery of Distributions and Undeliverable or Unclaimed Distributions. ...............53
E. Manner of Payment. ...............................................................54
F. Compliance with Tax Requirements. ...............................................................54
G. Allocations. ...............................................................55
H. No Postpetition or Default Interest on Claims. ...............................................................55
I. Foreign Currency Exchange Rate. ...............................................................55
J. Setoffs and Recoupment. ...............................................................55
K. No Double Payment of Claims. ...............................................................56
L. Satisfaction of Claims. ...............................................................56
M. Claims Paid or Payable by Third Parties. ...............................................................56

**ARTICLE VII . PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS** ...............................................................**57**
A. Allowance of Claims and Interests. ...............................................................57
B. Claims and Interests Administration Responsibilities. ...............................................................58
C. Estimation of Claims and Interests. ...............................................................58
D. Adjustment to Claims or Interests Without Objection. ...............................................................59
E. Time to File Objections to Claims ...............................................................59
F. Disallowance of Claims. ...............................................................59
G. Amendments to Proofs of Claims or Interests. ...............................................................60
H. No Distributions Pending Allowance. ...............................................................60
I. Distributions After Allowance. ...............................................................60
J. Single Satisfaction of Claims. ...............................................................60
K. Claims Not Receiving a Distribution. ...............................................................60

71306/0001-53355255v12

**ARTICLE VIII . SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**..........................................................................................................**61**
   A.   Settlement, Compromise, and Release of Claims and Interests........................................61
   B.   Release of Liens. .............................................................................................................61
   C.   Releases by the Debtors. .................................................................................................62
   D.   Releases by Holders of Claims and Interests. .................................................................63
   E.   Exculpation. ....................................................................................................................64
   F.   Injunction. ......................................................................................................................65
   G.   Protections Against Discriminatory Treatment. ..............................................................66
   H.   Document Retention. ......................................................................................................66
   I.   Reimbursement or Contribution. ....................................................................................66

**ARTICLE IX . CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE**.....................................................................................................**67**
   A.   Conditions Precedent to the Effective Date. ..................................................................67
   B.   Waiver of Conditions. ....................................................................................................68
   C.   Effect of Failure of Conditions. .....................................................................................68
   D.   Substantial Consummation. ............................................................................................68

**ARTICLE X . MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**.............................................................................................................................**68**
   A.   Modifications and Amendments. ....................................................................................68
   B.   Effect of Confirmation on Modifications. ......................................................................69
   C.   Revocation or Withdrawal of the Plan............................................................................69

**ARTICLE XI . RETENTION OF JURISDICTION** .................................................**69**

**ARTICLE XII . MISCELLANEOUS PROVISIONS** .................................................**72**
   A.   Immediate Binding Effect...............................................................................................72
   B.   Additional Documents. ...................................................................................................72
   C.   Reservation of Rights......................................................................................................72
   D.   Successors and Assigns...................................................................................................72
   E.   Service of Documents. ....................................................................................................73
   F.   Term of Injunctions or Stays...........................................................................................75
   G.   Enforcement of Confirmation Order................................................................................75
   H.   Entire Agreement. ..........................................................................................................75
   I.   Exhibits. .........................................................................................................................75
   J.   Nonseverability of Plan Provisions.................................................................................75
   K.   Votes Solicited in Good Faith.........................................................................................76
   L.   Closing of Chapter 11 Cases...........................................................................................76
   M.   Waiver or Estoppel. .......................................................................................................76

71306/0001-53355255v12

**INTRODUCTION**

FreshRealm, Inc. and the above-captioned debtors and debtors in possession (each, a "<u>Debtor</u>" and, collectively, the "<u>Debtors</u>") propose this Plan for the resolution of the outstanding claims against, and equity interests in, the Debtors.  The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court.  This Plan constitutes a separate chapter 11 plan for each Debtor and, unless otherwise set forth herein, the classifications and treatment of Claims and Interests apply to each individual Debtor.

Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, and historical financial information, projections, and future operations, as well as a summary and description of this Plan and certain related matters.  Each Debtor is a proponent of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

*A.*     *Defined Terms.*

As used in this Plan, capitalized terms have the meanings given to them below.

1.     "*1L Protective Advance*" means that certain $1,800,000 protective advance provided by the First Lien Agent to the DIP Borrower on April 14, 2026, as a "Collateral Agent Advance" under and as defined in the First Lien Credit Agreement, which, pursuant to the express terms of the First Lien Credit Agreement, constitutes "Obligations" under the First Lien Documents.

2.     "*1L Roll-Up DIP Loans*" means the $22,800,000 in aggregate principal amount of the term loans outstanding under the First Lien Credit Agreement rolled-up pursuant to the Final DIP Order.

3.     "*2L Priority Collateral*" shall have the same meaning ascribed to such term in the Prepetition Intercreditor Agreement.

4.     "*2L Protective Advance*" means that certain $1,200,000 protective advance provided by the Second Lien Agent to the DIP Borrower on April 15, 2026, as a "Collateral Agent Advance" under and as defined in the Second Lien Credit Agreement, which, pursuant to the express terms of the Second Lien Credit Agreement, constitute "Obligations" under the Second Lien Documents.

71306/0001-53355255v12

5.  "*2L Roll-Up DIP Loans*" means the $15,200,000 in aggregate principal amount of the term loans outstanding under the Second Lien Credit Agreement rolled-up pursuant to the Final DIP Order.

6.  "*A&M Order*" means the *Order Authorizing the Debtors to (A) Retain Alvarez & Marsal North America, LLC to Provide Certain Executive Officers and Certain Additional Personnel, and (B) Designate Certain Executive Officers, and (II) Granting Related Relief* [Docket No. 255].

7.  "*Administrative Claim*" means a Claim against a Debtor arising on or after the Petition Date and before the Effective Date for the costs and expenses of administration of the Chapter 11 Cases under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors incurred on or after the Petition Date and through the Effective Date; (b) Allowed Professional Fee Claims in the Chapter 11 Cases; (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911–1930; and (d) adequate protection claims provided for in the DIP Orders.

8.  "*Administrative Claims Bar Date*" means the applicable deadline for Filing requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims and fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code), which shall be 30 days after the Effective Date for Administrative Claims that may have arisen, accrued, or otherwise become due and payable at any time on and subsequent to the Petition Date.

9.  "*Administrative Claims Objection Bar Date*" means the deadline for Filing objections to requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims and fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code), which shall be the later of (a) 60 days after the Effective Date and (b) 60 days after the Filing of the applicable request for payment of the Administrative Claims.

10.  "*Administrative Claims Reserve Amount*" means a reserve, in the amount of not less than [$●] of the funds available solely under the Wind-Down Budget, which shall be dedicated to the payment of Allowed Administrative Claims.

11.  "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Entity that is not a Debtor, the term "Affiliate" shall apply to such Entity as if the Entity were a Debtor.

12.  "*Agent*" means each of, and in each case in its capacity as such, the First Lien Agent, the Second Lien Agent, and the DIP Agent.

13.  "*Allowed*" means with respect to any Claim or Interest, except as otherwise provided herein:  (a) a Claim or Interest in a liquidated amount as to which no objection has been Filed prior to the applicable claims objection deadline and that is evidenced by a Proof of Claim

2

71306/0001-53355255v12

or Interest, as applicable, timely Filed by the Claims Bar Date or that is not required to be evidenced by a Filed Proof of Claim or Interest, as applicable, under the Plan, the Bankruptcy Code, or pursuant to a Final Order; (b) a Claim or Interest that is listed in the Schedules as not contingent, not unliquidated, and not Disputed, and for which no Proof of Claim or Interest, as applicable, has been timely Filed in an unliquidated or a different amount; or (c) a Claim or Interest that is upheld or otherwise Allowed (i) pursuant to the Plan, (ii) in any stipulation that is approved by the Bankruptcy Court, (iii) pursuant to any contract, instrument, indenture, or other agreement entered into or assumed (or assumed and assigned) in connection with the Plan, or (iv) by Final Order of the Bankruptcy Court (including any such Claim to which the Debtors had objected or which the Bankruptcy Court had disallowed prior to such Final Order).  With respect to any Claim or Interest described in clauses (a) and (c) above, such Claim or Interest shall be considered Allowed only if and to the extent that, (w) no objection to the Allowance of such Claim or Interest has been or, in the Debtors' or Wind-Down Debtors' reasonable good faith judgment may be, interposed on or before the Claims Objection Deadline (which shall have the meaning set forth in Article VII.E.) or Administrative Claims Objection Bar Date, as applicable, (x) an objection to such Claim or Interest is asserted and such Claim or Interest is subsequently Allowed pursuant to a Final Order, (y) such Claim or Interest is settled pursuant to, or is authorized under, a Final Order, or (z) such Claim or Interest is Allowed pursuant to the Plan or the Confirmation Order.  For the avoidance of doubt, unless otherwise ordered by the Bankruptcy Court or agreed to by the Debtors or the Wind-Down Debtors, as applicable, a Proof of Claim Filed after the Claims Bar Date shall not be Allowed for any purposes whatsoever. "*Allow*," "*Allowing*," and "*Allowance*" shall have correlative meanings.

14. "*Asset Purchase Agreements*" means any asset purchase agreements whereby the Debtors sold some or all of their assets under section 363 of the Bankruptcy Code and as approved by the Sale Orders, including all exhibits, appendices, supplements, and documents, schedules, and agreements thereto, and as may be amended, modified, or supplemented in accordance with the terms thereof.

15. "*Available Cash*" means, collectively, all Cash on hand held by the Debtors and the Wind-Down Debtors on and after the Effective Date, which shall include the proceeds reserved to fund the Wind Down as set forth in the Wind-Down Budget.

16. "*Avoidance Actions*" means any and all avoidance, recovery, or subordination actions or remedies that may be brought by or on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 544, 547, 548, 549, 550, 551, 552, or 553 of the Bankruptcy Code.

17. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

18. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of reference under section 157 of the Judicial Code, the United States District Court for the District of New Jersey.

71306/0001-53355255v12

19. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code, and the general, local, and chambers' rules of the Bankruptcy Court.

20. "*Bar Date Order*" means the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim, (IV) Approving Notice Thereof, and (V) Granting Related Relief* [Docket No. 256] (as the same may be amended, supplemented, or modified from time to time after entry thereof), entered by the Bankruptcy Court on June 18, 2026.

21. "*Bidding Procedures*" means the procedures governing the sale and marketing process for the Sale Transactions as approved pursuant to the Bidding Procedures Order.

22. "*Bidding Procedures Order*" means the *Order (I) Approving the Bidding Procedures, (II) Approving the Stalking Horse Bid Protections, (III) Scheduling Bid Deadlines and Auction(s), (IV) Approving the Form and Manner of Notice Thereof, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief* [Docket No. 160] (as may be modified, amended, or supplemented by further Final Order), entered by the Bankruptcy Court on May 21, 2026.

23. "*Blue Apron*" means Blue Apron, LLC, a Delaware limited liability company.

24. "*Blue Apron Deferred Payments*" means $32,000,000 in Cash that Blue Apron shall pay or cause to be paid to the DIP Agent, for the benefit of the DIP Lenders, beginning on the first business day of the first month following the Service Transfer Date (as defined in the TSA), by wire transfer to an account designated by the DIP Agent, for the benefit of the DIP Lenders, with such Blue Apron Deferred Payments being guaranteed by Wonder Group, Inc., as guarantor.

25. "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

26. "*Business Interruption Insurance Claims*" means all rights and claims under the Business Interruption Insurance Policies.

27. "*Business Interruption Insurance Policies*" means all insurance policies (including any "tail policy" or run-off endorsement) that have been issued or provide coverage at any time to any of the Debtors (or any of their predecessors or successors) providing business interruption liability coverage and all agreements, documents, or instruments related thereto.

28. "*Carve Out*" shall have the same meaning ascribed to it in the Final DIP Order.

29. "*Cash*" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

30. "*Cash Collateral*" has the meaning ascribed to it under section 363(a) of the Bankruptcy Code.

71306/0001-53355255v12

31. "*Cause of Action*" or "*Causes of Action*" means any actions, claims, cross-claims, third-party claims, interests, damages, controversies, remedies, disputes, causes of action, debts, judgments, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, interests, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, Disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in Law or in equity, or pursuant to any other theory of Law or otherwise. "Causes of Action" also include: (a) any rights of setoff, counterclaims, or recoupments, and any claims under contracts or for breaches of duties imposed by Law or in equity; (b) any and all claims based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal Law, or breach of any duty imposed by Law or in equity, including Securities laws, negligence, and gross negligence; (c) any and all rights to dispute, object to, compromise, or seek to recharacterize, reclassify, subordinate, or disallow Claims or Interests; (d) any claims pursuant to section 362 or chapter 5 of the Bankruptcy Code (including, for the avoidance of doubt, Avoidance Actions); (e) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (f) any state or foreign Law fraudulent transfer or similar claims.

32. "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code, and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

33. "*Claim(s)*" means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor or a Debtor's Estate.

34. "*Claims and Noticing Agent*" means Kroll Restructuring Administration LLC in its capacity as claims and noticing agent for the Debtors and any successor.

35. "*Claims Bar Date*" means, collectively, the date established by the Bankruptcy Court in the Bar Date Order by which Proofs of Claim must be Filed with respect to such Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims for which the Bankruptcy Court entered an order excluding the Holders of such Claims from the requirement of Filing Proofs of Claim.

36. "*Claims Register*" means the official register of Claims maintained by the Claims and Noticing Agent.

37. "*Class*" means a class of Claims or Interests as set forth in Article III hereof in accordance with section 1122(a) of the Bankruptcy Code.

38. "*Collateral*" shall have the meaning ascribed to such collateral in the DIP Orders, which shall include, for the avoidance of doubt, the meaning ascribed to it in the DIP Term Sheet.

5

71306/0001-53355255v12

39.    "*Committee*" means the statutory committee of unsecured creditors of the Debtors, appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on May 14, 2026, as set forth in the *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 118].

40.    "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

41.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

42.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

43.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Required DIP Lenders.

44.    "*Consummation*" means the occurrence of the Effective Date.

45.    "*Cure*" or "*Cure Claim*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults on an Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease is assumed by such Debtor pursuant to section 365 of the Bankruptcy Code, other than with respect to a default that is not required to be cured under section 365(b)(2) of the Bankruptcy Code.

46.    "*D&O Claims*" means any and all Causes of Action of the Debtors against a D&O Party.

47.    "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy" or run-off endorsement) that have been issued, may be procured pursuant to this Plan, or provide coverage at any time to any of the Debtors (or any of their predecessors or successors) providing directors', members', trustees', officers', or managers' liability coverage and all agreements, documents, or instruments related thereto.

48.    "*D&O Party*" means all current and former directors, officers, or managers of the Debtors in their respective capacities as such, which are not Released Parties.

49.    "*Debtor*" means one or more of the Debtors, as debtors and debtors in possession, each in its respective individual capacity as a debtor and debtor in possession in the Chapter 11 Cases.

50.    "*Debtor Release*" means the releases given on behalf of the Debtors and their Estates as set forth in the Article VIII hereof.

71306/0001-53355255v12

51.    "*Debtors*" means, collectively, FreshRealm, Inc., FreshRealm Holdings, Inc., FreshRealm HR, LLC, FreshRealm Texas, LLC, and IHEC, LLC.

52.    "*Deemed DIP Paydown Amount*" means [$●], which represents the Blue Apron Deferred Payment, discounted at a rate of [●%], and shall be deemed remitted to the DIP Agent as a paydown of the DIP Loans as of the Effective Date.

53.    "*DIP Agent*" means BGC Lender Rep LLC, in its capacity as administrative agent and collateral agent for the DIP Lenders.

54.    "*DIP Borrower*" means FreshRealm, Inc.

55.    "*DIP Claims*" means any and all Claims arising under, derived from, or based upon the DIP Documents, the DIP Facility, and the DIP Orders, including all Claims for principal amounts outstanding, interest, fees, expenses, costs, indemnification obligations, reimbursement obligations, and other charges of the DIP Secured Parties arising under or related to the DIP New Money Loans, the Protective Advances, the DIP Roll-Up Loans, DIP Documents, the DIP Facility, or the DIP Orders, after and subject to receipt of the DIP Paydown Amount.

56.    "*DIP Collateral*" shall have the meaning ascribed to such collateral in the Final DIP Order.

57.    "*DIP Credit Agreement*" means that certain Super-Priority Senior Secured Debtor-In-Possession Financing Agreement, dated as of June 1, 2026, by and among the DIP Borrower, the DIP Guarantors (as defined in the DIP Credit Agreement), the DIP Lenders and the DIP Agent.

58.    "*DIP Facility*" means the superpriority senior secured debtor-in-possession credit facility provided under the DIP Documents.

59.    "*DIP Documents*" means the DIP Credit Agreement together with the schedules and exhibits attached thereto, and all security agreements, pledge agreements, and related agreements, documents, and instruments and amendments executed and delivered in connection therewith, including the DIP Orders.

60.    "*DIP Lenders*" means the various lenders party thereto to the DIP Credit Agreement.

61.    "*DIP Liens*" shall have the meaning ascribed to such liens in the Final DIP Order.

62.    "*DIP Loans*" means collectively, the DIP New Money Loans and DIP Roll-Up Loans.

63.    "*DIP New Money Loans*" means the term loans made under that certain superpriority senior secured debtor-in-possession credit facility pursuant to the DIP Credit Agreement, in the currently outstanding principal amount of [$18 million].

71306/0001-53355255v12

64.    "*DIP Orders*" means the Interim DIP Order and the Final DIP Order.

65.    "*DIP Paydown*" means the payment to the DIP Agent of the DIP Paydown Amount.

66.    "*DIP Paydown Amount*" means the (i) Cash proceeds of the Sale Transactions or Excess Cash as set forth in the Distributable Waterfall and (ii) the Blue Apron Deferred Payments remitted to the DIP Agent equal to the Deemed DIP Paydown Amount.

67.    "*DIP Roll-Up Loans*" means collectively, the 1L Roll-up DIP Loans and the Faranord Roll-Up DIP Loans, issued under the DIP Credit Agreement and as approved by the DIP Orders, in the currently outstanding principal amount of $38 million.

68.    "*DIP Secured Parties*" means the DIP Lenders and the DIP Agent.

69.    "*DIP Term Sheet*" has the meaning ascribed to it in the Final DIP Order.

70.    "*Directed 1L Priority Collateral*" means all of the Debtors' rights in, to and under all Business Interruption Insurance Policies and Business Interruption Insurance Claims, all claims outstanding thereunder and all products and proceeds of such insurance and claims.

71.    "*Disbursing Agent*" means (a) prior to the Effective Date, the Debtors and (b) on and after the Effective Date, the Liquidating Trustee, the Plan Administrator, or the Entity or Entities selected by the Liquidating Trustee or Plan Administrator, which Entity or Entities may include the Claims and Noticing Agent, as applicable, to make or facilitate distributions contemplated under the Plan.

72.    "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules attached thereto, and as amended, modified, or supplemented from time to time in accordance with the terms thereof.

73.    "*Disclosure Statement Order*" means any order of the Bankruptcy Court approving or conditionally approving the adequacy of the Disclosure Statement.

74.    "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest: (a) that is not Allowed, (b) as to which a dispute is being adjudicated by a court of competent jurisdiction in accordance with non-bankruptcy law, or (c) that is Filed in the Bankruptcy Court and not withdrawn, as to which a timely objection or request for estimation has been Filed.

75.    "*Distributable Value*" means in accordance with the Sale Orders, Sale and Settlement Order, and the DIP Orders, an amount equal to the proceeds available to be distributed to the DIP Secured Parties on account of the DIP Obligations, the First Lien Secured Parties on account of the First Lien Obligations, and the Second Lien Secured Parties on account of the Second Lien Obligations, after giving effect to the treatment and satisfaction of the DIP Obligations under this Plan, including the DIP Paydown, all in accordance with the Distributable Waterfall, minus the sum of: (i) the amount necessary to fund the Wind-Down Debtor Account with the Wind-Down Debtor Account Amount, (ii) the amount necessary to pay in full satisfaction all Claims required to be satisfied pursuant to section 1129 of the Bankruptcy Code

8

to confirm the Plan (which, for the avoidance of doubt, shall include payment of Administrative Claims, Priority Tax Claims, and Other Priority Claims, in each case, solely to the extent Allowed), (iii) subject to the reasonable consent of the Required DIP Lenders, the amount necessary to make any other required payments in order to implement the terms of the Plan, and (iv) subject to the consent of the Required DIP Lenders, any other fees, costs, or expenses in excess of the Wind-Down Budget reasonably necessary to liquidate, monetize, or collect the Wind-Down Debtor Assets.

76.     "*Distributable Waterfall*" means proceeds of Collateral (subject to the Carve Out, except that the proceeds of the Blue Apron Deferred Payment shall not be subject to the Carve Out) which shall be applied in accordance with the following priorities:

(a)     First, the DIP New Money Loans shall be repaid, *pro rata*, from (i) all Excess Cash and (ii) all proceeds from the sale of Collateral, including the proceeds of the Blue Apron Deferred Payment.  The proceeds of the Blue Apon Deferred Payment shall only be applied to repay the DIP New Money Loans in an amount equal to the Deemed DIP Paydown Amount.

(b)     After repayment in full of the DIP New Money Loans:

(i)     The proceeds of all Collateral (other than the proceeds of the Directed 1L Priority Collateral and the 2L Priority Collateral), including Excess Cash shall be applied in an allocation to be agreed to the 1L and 2L Roll-Up DIP Loans until an aggregate principal amount of the 2L Roll-Up DIP Loans of $7,000,000 is repaid with the proceeds thereto (the "Initial 2L Roll-Up DIP Repayment"), after which time such proceeds shall be applied solely to the 1L Roll-Up DIP Loans and, to the extent the 1L Roll-Up DIP Loans are paid in full, to any outstanding First Lien Obligations until discharge of the First Lien Obligations. The proceeds of the Blue Apon Deferred Payment shall only be applied to repay 1L and 2L Roll-Up DIP Loans in an amount equal to the Deemed DIP Paydown Amount.

(ii)    The proceeds of the 2L Priority Collateral shall be applied to the 2L Roll-Up DIP Loans and to the extent the 2L Roll-Up DIP Loans have been paid in full, to any outstanding prepetition Second Lien Obligations.

(iii)   The proceeds of the Directed 1L Priority Collateral shall be applied to repay any remaining 1L Roll-Up DIP Loans or as otherwise agreed and, to the extent the 1LRoll-Up DIP Loans are paid in full, to any outstanding prepetition First Lien Obligations in accordance with the Prepetition Intercreditor Agreement or as otherwise agreed.

9

(c)     If any proceeds of Collateral remain after discharge of First Lien Obligations as set forth in (b)(i) or (iii) above, such remainder shall be applied consistent with the Prepetition Intercreditor Agreement.

77.     "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims against or Allowed Interests in the Debtors are eligible to receive distributions under the Plan, which date shall be the Effective Date, or such other date as is determined by the Debtors or designated in a Final Order.

78.     "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect, and (b) all conditions precedent to the occurrence of the Effective Date set forth in Article IX of the Plan have been satisfied or waived in accordance with Article IX of the Plan.

79.     "*Entity*" or "*Entities*" means any entity or entities, as defined in section 101(15) of the Bankruptcy Code.

80.     "*Estate*" means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired by the Debtors after the Petition Date through the Effective Date.

81.     "*Excess Cash*" means all Cash on hand on the Effective Date that is in excess of (a) the Wind Down Debtor Account Amount and  (b) the Professional Fee Escrow Amount.

82.     "*Exculpated Party*" or "*Exculpated Parties*" means, in each case solely in its capacity as such: (a) each of the Debtors; (b) the Independent Directors; (c) the Committee and its members; and (d) with respect to the Debtors and the Committee, each of their respective current and former directors, managers, officers, attorneys, financial advisors, consultants, or other professionals or advisors, as applicable, that served in such capacity between the Petition Date and Effective Date.

83.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 or 1123 of the Bankruptcy Code.

84.     "*Existing Equity Interests*" means, collectively, all Interests in FreshRealm Holdings, Inc. outstanding immediately prior to the Effective Date.

85.     "*Federal Judgment Rate*" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

86.     "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Claims and Noticing Agent or the Bankruptcy Court.

87.     "*Final DIP Order*" means the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and*

10

*Superpriority Administrative Expense Claims, (III) Granting Adequate Protection, (IV) Modifying Automatic Stay, and (V) Granting Related Relief* [Docket No. 210], entered by the Bankruptcy Court on June 2, 2026.

88.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely taken or Filed, or as to which any appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

89.     "*First Day Pleadings*" means the first day pleadings that the Debtors Filed with the Bankruptcy Court upon the commencement of the Chapter 11 Cases.

90.     "*First Lien Agent*" means BGC Lender Rep LLC, FSB as administrative agent and collateral agent (in such capacities) under the First Lien Credit Agreement.

91.     "*First Lien Claim*" means the Claim associated with the First Lien Loan Obligations.

92.     "*First Lien Collateral*" means the Collateral (as defined in the Prepetition Intercreditor Agreement) of the First Lien Lenders pursuant to the Prepetition Intercreditor Agreement, the First Lien Collateral Agreement and the other First Lien Documents.

93.     "*First Lien Collateral Agreement*" means that certain Pledge and Security Agreement, dated as of March 11, 2025, made by Parent, the DIP Borrower, and the other Grantors (as defined therein) from time to time party thereto in favor of the First Lien Agent (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time).

94.     "*First Lien Credit Agreement*" means that certain Financing Agreement, dated as of March 11, 2025 (such credit agreement, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time), by and among the DIP Borrower, Parent, certain subsidiaries of the DIP Borrower as guarantors, First Lien Lenders, and the First Lien Agent.

95.     "*First Lien Deficiency Claim*" means the unsecured Claims held by the First Lien Lenders pursuant to the First Lien Documents pursuant to applicable law and sections 502 and 506(a) of the Bankruptcy Code or any other similar provisions.

96.     "*First Lien Deficiency Claim Amount*" means an amount equal to the First Lien Obligations minus the amounts paid on account of the First Lien Claim from the proceeds of First Lien Collateral.  Solely for purposes of voting under Bankruptcy Rule 3018, the First Lien

11

Deficiency Claim Amount shall be $[●].  For the purposes of distributions under the Plan, the First Lien Deficiency Claim shall equal the First Lien Deficiency Claim Amount.

97.    "*First Lien Documents*" means the First Lien Credit Agreement and the other Loan Documents (as defined in the First Lien Credit Agreement).

98.    "*First Lien Lenders*" means the various lenders from time to time party to the First Lien Credit Agreement.

99.    "*First Lien Loan Obligations*" means the obligations of the Debtors to the First Lien Secured Parties pursuant to the First Lien Documents without objection, defense, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $51,327,785.56 as of the Petition Date, on account of First Lien Term Loans *plus* accrued and unpaid interest with respect thereto and any additional fees, costs, premiums, expenses (including any attorneys', accountants', consultants', appraisers', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, guarantee obligations, other contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the First Lien Credit Agreement), in each case, owing under or in connection with the First Lien Documents.

100.    "*First Lien Secured Parties*" means the First Lien Agent, and together with the First Lien Lenders and the other Secured Parties (as defined in the First Lien Credit Agreement).

101.    "*First Lien Term Loans*" means those certain term loans in a total aggregate principal amount outstanding as of the Petition Date of $51,327,785.56, under the First Lien Credit Agreement.

102.    "*General Unsecured Claim*" means any Claim that is not:  (a) an Administrative Claim; (b) a Professional Fee Claim; (c) a Priority Tax Claim; (d) an Other Priority Claim; (e) a DIP Claim (f) a Secured Claim; (g) an Other Secured Claim; (h) a First Lien Claim (i) a Second Lien Claim; (j) an Intercompany Claim; (k) a Section 510(b) Claim; or (l) any Claim to the extent satisfied prior to the Effective Date.  For the avoidance of doubt, "General Unsecured Claim" shall include (i) First Lien Deficiency Claims, and (ii) Second Lien Deficiency Claims.

103.    "*Governing Body*" means, in each case in its capacity as such, the board of directors, board of managers, manager, general partner, investment committee, special committee, or such similar governing body of any of the Debtors or any Wind-Down Debtors, as applicable.

104.    "*Governmental Bar Date*" means October 26, 2026, at 5:00 p.m. (prevailing Eastern Time), which is the date by which Proofs of Claim must be Filed with respect to such Claims held by Governmental Units pursuant to the Bar Date Order.

105.    "*Governmental Unit*" means any governmental unit, as defined in section 101(27) of the Bankruptcy Code.

106.    "*Holder*" means an Entity holding a Claim against or an Interest in any Debtor.

12

71306/0001-53355255v12

107.   "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

108.   "*Independent Directors*" means Jill Frizzley and Charlie Piper, in their capacities as current or former independent directors of certain of the Debtors.

109.   "*Insurance Collateral*" means all of the Debtors' rights in, to and under all Insurance Policies, all claims outstanding thereunder and all products and proceeds of such insurance and claims.

110.   "*Insurance Policies*" means all insurance policies, including the D&O Liability Insurance Policies and Business Interruption Insurance Policies, that have been issued (or provide coverage) at any time to any of the Debtors (or any of their predecessors) and all agreements, documents, or instruments relating thereto.

111.   "*Insurer*" means any company or other entity that issued an Insurance Policy and any third-party administrator of or for any Insurance Policy, along with any predecessors and/or successor thereof.

112.   "*Intercompany Claim*" means any Claim held by a Debtor or an Affiliate of a Debtor against a Debtor arising before the Petition Date.

113.   "*Intercompany Interest*" means an Interest in a Debtor held by a Debtor or an Affiliate of a Debtor.  For the avoidance of doubt, no Interest transferred to a Purchaser in connection with the Sale Transactions shall be an Intercompany Interest.

114.   "*Interest*" means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Claims against any Debtor subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

115.   "*Interim Compensation Order*" means the *Administrative Fee Order Establishing Procedures for the Allowance and Payment of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of the Court* [Docket No. 159], entered by the Bankruptcy Court on May 21, 2026.

116.   "*Interim DIP Order*" means the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 51], entered by the Bankruptcy Court on April 29, 2026.

13

117.    "*IRS*" means the United States Internal Revenue Service.

118.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

119.    "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

120.    "*Lender Professionals*" shall have the meaning ascribed to such term in the DIP Orders.

121.    "*Lien(s)*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

122.    "*Liquidating Trust*" means the liquidating trust established on the Effective Date pursuant to Article IV herein and the Liquidating Trust Agreement.

123.    "*Liquidating Trust Agreement*" means the agreement, filed with the Plan Supplement and executed as of the Effective Date, that establishes and governs the Liquidating Trust, subject to the reasonable consent of the DIP Agent and the First Lien Agent.

124.    "*Liquidating Trust Assets*" means the Liquidating Trust Contribution and the Liquidating Trust Retained Causes of Action.

125.    "*Liquidating Trust Beneficiaries*" means all Holders of Liquidating Trust Interests.

126.    "*Liquidating Trust Contribution*" means a contribution from Blue Apron, pursuant to the Sale and Settlement Order and Settlement Agreement, in the amount of $500,000, which amount has been paid and is currently being held by the Debtors in a segregated account.

127.    "*Liquidating Trust Distributable Proceeds*" means the Liquidating Trust Assets or the Cash proceeds thereof; *minus* Liquidating Trust Expenses.

128.    "*Liquidating Trust Expenses*" means any fees and expenses incurred by the Liquidating Trustee (including, but not limited to, the compensation of the Liquidating Trustee and the reasonable fees and expenses of professionals or other persons retained by the Liquidating Trustee) in connection with the administration of the Liquidating Trust.

129.    "*Liquidating Trust Interests*" means all of the interests in the Liquidating Trust allocable to applicable Holders of Allowed Claims (in accordance with the Plan and the Liquidating Trust Agreement, which shall not include Allowed Secured Claims or Interests (if any) held by any Party, but shall include the (i) First Lien Deficiency Claims and (ii) Second Lien Deficiency Claims). For the avoidance of doubt, the Liquidating Trust Interests shall represent only the right to receive distributions from the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement and shall not be deemed "securities" or "equity interests" in any Debtor or in any successor entity, and shall not grant any ownership, control or

14

governance rights in the Liquidating Trust or in any entity whose assets are held by the Liquidating Trust.

130. "*Liquidating Trust Retained Causes of Action*" means those Causes of Action that shall vest in the Liquidating Trust on the Effective Date. For the avoidance of doubt, Liquidating Trust Retained Causes of Action shall not include any Causes of Action that are settled, released, or exculpated under the Plan or that are expressly sold or assigned to any Purchaser, as set forth in the applicable Asset Purchase Agreement, pursuant to the applicable Sale Order. The list of Liquidating Trust Retained Causes of Action shall be filed with the Plan Supplement.

131. "*Liquidating Trustee*" means the Person or Entity, or any successor thereto, designated by the Debtors and the Committee, but subject to the consent of the Prepetition Secured Parties, to have all powers and authorities set forth in the Plan and the Liquidating Trust Agreement.

132. "*Misfits Market*" means Misfits Market, Inc., a Delaware corporation.

133. "*Other Priority Claim*" means any Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases, other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

134. "*Other Secured Claim*" means any Secured Claim that is not a DIP Claim, a First Lien Claim, or a Second Lien Claim.

135. "*Parent*" means FreshRealm Holdings, Inc.

136. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

137. "*Petition Date*" means April 27, 2026, the date on which FreshRealm Holdings, Inc. and certain of its subsidiaries commenced the Chapter 11 Cases.

138. "*Plan*" means this chapter 11 plan, including all exhibits, supplements (including the Plan Supplement), appendices, and schedules (as amended, modified, or supplemented from time to time in accordance with the terms hereof).

139. "*Plan Administrator*" means the Person or Entity, or any successor thereto, designated by the Debtors, subject to the consent of the DIP Agent and the First Lien Agent and the Second Lien Agent, to have all powers and authorities set forth in the Plan and the Plan Administrator Agreement, and as the sole director and the sole officer of each Wind-Down Debtor, succeeding to the powers of such Wind-Down Debtor's directors and officers.

140. "*Plan Administrator Agreement*" means that certain agreement by and among the Debtors, the Plan Administrator, and the Wind-Down Debtors, which shall be subject to the DIP Agent, First Lien Agent's and Second Lien Agent's consent, which shall be included in the Plan Supplement.

71306/0001-53355255v12

141. "*Plan Administration Assets*" means (i) the Wind-Down Debtor Assets; (ii) the Administrative Claims Reserve Amount; and (iii) any Wind-Down Debtor Retained Causes of Action designated as Plan Administration Assets in the Plan Supplement.

142. "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) acceptable to the Required DIP Lenders and to be Filed initially by the Debtors no later than the Plan Supplement Filing Date and may be further amended thereafter, including the following to the extent applicable and known at such time: (a) Schedule of Assumed Executory Contracts and Unexpired Leases, (b) Schedule of Retained Causes of Action, (c) the Plan Administrator Agreement, (d) the Liquidating Trust Agreement, (e) the Wind-Down Budget, (f) any other necessary documentation in accordance with the Plan, and (g) additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

143. "*Plan Supplement Filing Date*" means (a) the date that is seven days prior to the deadline to object to Confirmation of the Plan or (b) such later date as may be approved by the Bankruptcy Court.

144. "*Prepetition Agent*" means collectively, the First Lien Agent and Second Lien Agent.

145. "*Prepetition Collateral*" means collectively, the First Lien Collateral and the Second Lien Collateral.

146. "*Prepetition Deficiency Claims*" means collectively, the First Lien Deficiency Claims and the Second Lien Deficiency Claims, which shall be Allowed General Unsecured Claims under Class 6 of the Plan.

147. "*Prepetition Intercreditor Agreement*" means that certain Amended and Restated Intercreditor Agreement, dated as of December 4, 2025, among DIP Borrower, each of the Grantors party thereto, BGC Lender Rep LLC, as First Lien Representative, and Faranord (US) III Pte Ltd, as Second Lien Representative, as amended, restated, supplemented or otherwise modified.

148. "*Prepetition Liens*" means collectively, the First Lien Claim and the Second Lien Claim.

149. "*Prepetition Loan Documents*" means collectively, the First Lien Documents and Second Lien Documents, and all other agreements, documents, and instruments related thereto, including any guaranty agreements, pledge and collateral agreements, intercreditor agreements, and other security agreements.

150. "*Prepetition Secured Parties*" means collectively, the First Lien Secured Parties and the Second Lien Secured Parties.

71306/0001-53355255v12

151. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code that is not otherwise a Secured Tax Claim.

152. "*Professional*" means an Entity:  (a) retained pursuant to a Final Order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

153. "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims that the Professionals reasonably estimated in good faith that they have incurred or will incur in rendering services to the Debtors, which estimates Professionals shall deliver to the Debtors as set forth in Article II.B of this Plan.

154. "*Professional Fee Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 363, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

155. "*Professional Fee Escrow Account*" means an account funded with Cash by the Debtors or the Wind-Down Debtors, as applicable, on the Effective Date in an amount equal to the total Professional Fee Amount.

156. "*Proof of Claim*" means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the Claims Bar Date, the Administrative Claims Bar Date, or the Governmental Bar Date, as applicable.

157. "*Protective Advances*" means collectively, the 1L Protective Advance and the 2L Protective Advance.

158. "*Purchaser*" means Misfits Market or any other purchaser, pursuant to the applicable Asset Purchase Agreement and as set forth in the applicable Sale Order.

159. "*Quarterly Fees*" means any and all fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable.

160. "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

161. "*Rejection Damages Claims Bar Date*" shall have the meaning set forth in Article V.B.

162. "*Related Party*" means, each of, and in each case in its capacity as such, current and former directors, managers, the Released Officers, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, assigns (whether by

17

operation of law or otherwise), subsidiaries, current, former, and future associated entities, managed or advised entities, accounts or funds, partners, limited partners, general partners, principals, members, management companies, fund advisors, managers, fiduciaries, trustees, employees, agents (including any disbursing agent), advisory board members, financial advisors, attorneys (including any attorneys or professionals retained by any current or former director or manager of a Debtor in his or her capacity as director or manager as a Debtor), accountants, investment bankers, consultants, representatives, and other professionals and advisors, and any such Person's or Entity's respective predecessors, successors, and assigns. For the avoidance of doubt, the members of each Governing Body are Related Parties of the Debtors.

163. "*Released Officers*" means current and former officers of the Debtors who served in such capacity on or after October 16, 2025, other than Mr. Carlos Iniguez and Ms. Snow Le, which, for the avoidance of doubt, are not Released Officers.

164. "*Released Party*" or "*Released Parties*" means, each of, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Committee and its members; (c) the DIP Secured Parties; (d) the First Lien Secured Parties; (e) the Second Lien Secured Parties; (f) each Releasing Party; (g) each current and former Affiliate of each Entity in clause (a) through the following clause (f); each Related Party of each Entity in clause (a) through this clause (g), each in their capacity as such; (h) the current members of the Board or Boards of the Debtors, Jill Frizzley and Charlie Piper; and (i) the Released Officers; *provided, however,* that, in each case, an Entity shall not be a Released Party if it: (x) elects to opt out of the Third-Party Release; or (y) timely objects to the Third-Party Release and such objection is not withdrawn or otherwise resolved before the Confirmation Order is entered. For the avoidance of doubt and notwithstanding anything herein to the contrary, no non-Releasing Party shall be a Released Party under this Plan.

165. "*Releasing Party*" or "*Releasing Parties*" means, each of, and in each case, in their respective capacities as such: (a) the Debtors; (b) the Committee and its members; (c) the DIP Secured Parties; (d) the First Lien Secured Parties; (e) the Second Lien Secured Parties; (f) all Holders of Claims; (g) all Holders of Interests; (h) each current and former Affiliate of each Entity in clause (a) through the following clause (g); (i) each Related Party of each Entity in clause (a) through this clause (g), for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable law; *provided, however,* that each Entity in the foregoing clause (f) or (g) that (x) elects to opt out of the Third-Party Release; or (y) timely objects to the Third-Party Release and such objection is not withdrawn or otherwise resolved before the Confirmation Order is entered shall not be a Releasing Party.

166. "*Required DIP Lenders*" has the meaning ascribed to such term under the DIP Credit Agreement.

167. "*Sale and Settlement Order*" means that certain *Order (I) Approving The Settlement Between the Debtors and Blue Apron Pursuant to Bankruptcy Rule 9019, (II) Approving the Sale of Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (III) Authorizing the Debtors to Enter Into and Perform Their Obligations Under an Asset Purchase Agreement, (IV) Authorizing the Debtors to Enter Into a Transition Services Agreement, (V) Approving the Procedures Authorizing the Debtors to Assume and Assign*

18

*Executory Contracts and Unexpired Leases, (VI) Authorizing the Debtors to Reject Certain Agreements, and (VII) Granting Related Relief* [Docket No. 209], entered by the Bankruptcy Court on June 2, 2026.

168.     "*Sale Orders*" means any Orders entered by the Bankruptcy Court authorizing the Debtors' sale of some or all of the Debtors' assets under section 363 of the Bankruptcy Code, including but not limited to, the Sale and Settlement Order.

169.     "*Sale Transactions*" means the sale or series of sales of all, or substantially all, or a portion of the Debtors' assets to the applicable Purchaser and any transactions undertaken in connection therewith as set forth in the Asset Purchase Agreements and approved by the Sale Orders.

170.     "*Sale Transactions Documentation*" means all motions, filings, documents, and agreements related to the Sale Transactions, including without limitation, any Asset Purchase Agreement, any Sale Order, the Bidding Procedures, and the Bidding Procedures Order.

171.     "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule (including any amendments or modifications thereto), if any, of the Executory Contracts and Unexpired Leases to be assumed, or assumed and assigned, by the Wind-Down Debtors on behalf of the applicable Debtor pursuant to the Plan.

172.     "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means the schedule (including any amendments or modifications thereto), if any, of the Executory Contracts and Unexpired Leases to be rejected by the Wind-Down Debtors on behalf of the applicable Debtor pursuant to the Plan.

173.     "*Schedule of Retained Causes of Action*" means the schedule of Wind-Down Debtor Retained Causes of Action and Liquidating Trust Retained Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors, which shall be filed as an Exhibit to the Plan Supplement.

174.     "*Schedules*" means, collectively, the schedules of assets and liabilities, Schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules, as such Schedules may be amended, modified, or supplemented from time to time.

175.     "*Second Lien Agent*" means Faranord (US) III Pte Ltd, as administrative agent and collateral agent under the Second Lien Credit Agreement.

176.     "*Second Lien Claim*" means the Claim on account of the Second Lien Term Loans or otherwise arising under the Second Lien Credit Agreement and Second Lien Loan Obligations (which, for the avoidance of doubt shall include interest, fees, and all other amounts due and owing under the Second Lien Credit Agreement).

19

177. "*Second Lien Collateral*" means the Collateral (as defined in the Prepetition Intercreditor Agreement) of the Second Lien Lenders pursuant to the Prepetition Intercreditor Agreement, the Second Lien Collateral Agreement and the other Second Lien Documents

178. "*Second Lien Collateral Agreement*" means that certain Pledge and Security Agreement, dated as of October 16, 2025, made by Parent, the DIP Borrower, and the other Grantors (as defined therein) from time to time party thereto in favor of the Second Lien Agent (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time).

179. "*Second Lien Credit Agreement*" means that certain Financing Agreement, dated as of October 16, 2025 (such credit agreement, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time) by and among the DIP Borrower, Parent, certain subsidiaries of the DIP Borrower as guarantors, the Second Lien Lenders, and the Second Lien Agent.

180. "*Second Lien Deficiency Claim*" means unsecured Claims held by the Second Lien Lenders pursuant to the Second Lien Documents pursuant to applicable law and sections 502 and 506(a) of the Bankruptcy Code or any other similar provisions.

181. "*Second Lien Deficiency Claim Amount*" means an amount equal to the Second Lien Obligations minus the amounts paid on account of the Second Lien Claim from the proceeds of Second Lien Collateral.  Solely for purposes of voting under Bankruptcy Rule 3018, the Second Lien Deficiency Claim Amount shall be $[●].  For the purposes of distributions under the Plan, the Second Lien Deficiency Claim shall equal the Second Lien Deficiency Claim Amount.

182. "*Second Lien Lenders*" means the various lenders from time to time party thereto to the Second Lien Credit Agreement.

183. "*Second Lien Documents*" means the Second Lien Credit Agreement and other Loan Documents (as defined in the Second Lien Credit Agreement).

184. "*Second Lien Loan Obligations*" means the Debtors' obligations to the Second Lien Secured Parties pursuant to the Second Lien Documents without objection, defense, counterclaim, or offset of any kind, in the aggregate principal amount of not less than $117,400,000.00 as of the Petition Date, on account of Second Lien Term Loans *plus* accrued and unpaid interest with respect thereto and any additional fees, costs, premiums, expenses (including any attorneys', accountants', consultants', appraisers', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, guarantee obligations, other contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the Second Lien Credit Agreement), in each case, owing under or in connection with the Second Lien Documents

185. "*Second Lien Term Loans*" means the term loans issued pursuant to the Second Lien Credit Agreement, in the currently outstanding principal amount of not less than $117,400,000.00 as of the Petition Date.

71306/0001-53355255v12

186. "*Second Lien Secured Parties*" means the Second Lien Agent, the Second Lien Lenders and the other Secured Parties (as defined in the Second Lien Credit Agreement).

187. "*Section 510(b) Claim*" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code; *provided* that a Section 510(b) Claim shall not include any Claim subject to subordination under section 510(b) of the Bankruptcy Code arising from or related to an Interest. For the avoidance of doubt, neither DIP Claims, First Lien Claims, or Second Lien Claims are, and shall not be, Section 510(b) Claims.

188. "*Secured*" means, when referring to a Claim, a Claim that is: (a) secured by a Lien on collateral in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable Law or by reason of a Final Order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Debtor's interest in such collateral or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code and applicable Law or (b) Allowed pursuant to the Plan as a Secured Claim.

189. "*Secured Tax Claim*" means any Secured Claim that, absent its secured status would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claims for penalties.

190. "*Securities Act*" means the U.S. Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

191. "*Security*" means a security as defined in section 2(a)(1) of the Securities Act.

192. "*Settlement Agreement*" means that certain settlement agreement by and among the Debtors and Blue Apron, as amended, approved by the Bankruptcy Court pursuant to the Sale and Settlement Order.

193. "*Tax Code*" means the United States Internal Revenue Code of 1986, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

194. "*Term Loan Credit Agreements*" means collectively, the First Lien Credit Agreement and Second Lien Credit Agreement.

195. "*Transferred Causes of Action*" means any and all Causes of Action held by the Debtors that were or shall be transferred to the Purchasers pursuant to any Sale Transactions.

196. "*TSA*" means that certain Transition Services Agreement by and between DIP Borrower, Misfits Market, and, solely for the purposes of Sections 2.4, 3.2(e) and 3.6 of the TSA, Blue Apron, dated April 27, 2026, and approved by the Sale and Settlement Order.

197. "*U.S. Trustee*" means the Office of the United States Trustee for the District of New Jersey.

21

198.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 or section 1123 of the Bankruptcy Code.

199.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

200.    "*Wind Down*" means, the wind down, liquidation, and dissolution of the Debtors' Estates following the Effective Date as set forth in Article IV hereof.

201.    "*Wind-Down Budget*" means the budget funding the Wind Down, in an amount no more than [$●] million and which shall include certain amounts required to satisfy certain required obligations in connection therewith (each in accordance with the Asset Purchase Agreements and the Sale Orders), as acceptable to the Debtors and the Required DIP Lenders, as may be amended by the Debtors, Wind-Down Debtors, or the Plan Administrator, as applicable, with the consent of the Required DIP Lenders.

202.    "*Wind-Down Debtor*" means the Debtor or Debtors or any successor or successors thereto after the Effective Date responsible for effectuating the Wind Down and implementing the terms of the Plan.

203.    "*Wind-Down Debtor Account*" means the Debtors' bank account or accounts used to fund all expenses and payments required to be made by the Wind-Down Debtors, which account will be funded on the Effective Date with Available Cash in the amount of the Wind-Down Debtor Account Amount.  Following the Wind Down, any remaining amounts in the Wind-Down Debtor Account shall be distributed in accordance with Article III hereof.  For the avoidance of doubt, the Wind-Down Debtor Account and the proceeds therein shall become property of the Wind-Down Debtors on the Effective Date.

204.    "*Wind-Down Debtor Account Amount*" means the amount reserved by the Plan Administrator, in an amount acceptable to the Required DIP Lenders, to fund the Wind Down in accordance with the Wind-Down Budget which, for avoidance of doubt, shall be no more than [$●].

205.    "*Wind-Down Debtor Assets*" means, following the consummation of the Sale Transactions, all of the remaining assets of the Debtors' Estates, including the Wind-Down Debtor Account Amount but excluding the (i) DIP Paydown Amount and (ii) the Liquidating Trust Assets.

206.    "*Wind-Down Debtor Retained Causes of Action*" means those Causes of Action that shall vest in the Wind-Down Debtors on the Effective Date.  For the avoidance of doubt, Wind-Down Debtor Retained Causes of Action shall not include the Liquidating Trust Retained Causes of Action or any Causes of Action that are settled, released, or exculpated under the Plan or that are expressly sold or assigned to any Purchaser, as set forth in the applicable Asset Purchase Agreement, pursuant to the applicable Sale Order.  The list of Wind-Down Debtor Retained Causes of Action shall be filed with the Plan Supplement.

22

B.       *Rules of Interpretation.*

For purposes of this Plan:  (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan or Confirmation Order, as applicable; (iv) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (v) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (vi) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (vii) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (viii) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document created or entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of Law or procedure is supplied by federal Law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws; (ix) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (x) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (xi) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (xii) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (xiii) any effectuating provisions may be interpreted by the Wind-Down Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall be conclusive; (xiv) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (xv) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (xvi) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (xvii) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

23

C.      *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.      *Governing Law.*

Unless a rule of Law or procedure is supplied by federal Law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing Law of such agreement shall control); *provided*, *however*, that corporate, limited liability company, or limited liability partnership governance matters relating to the Debtors or the Wind-Down Debtors, as applicable, not incorporated in Delaware shall be governed by the laws of the jurisdiction of incorporation or formation of the relevant Debtor or the Wind-Down Debtor, as applicable.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors or the Wind-Down Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Wind-Down Debtors means the Debtors and the Wind-Down Debtors, as applicable, to the extent the context requires.

G.      *No Substantive Consolidation; Limited Administrative Consolidation.*

Although for purposes of administrative convenience and efficiency the Plan has been Filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors except for the limited purposes set forth herein.  The entry of the Confirmation Order shall constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the limited consolidation of each of the Debtors, and their respective estates, solely for voting, confirmation, and distribution purposes under the Plan.  This limited consolidation shall not affect (other than for purposes related to funding distributions under the Plan) (a) the legal and organizational structure of the Debtors, (b) defenses to any Causes of Action or requirements for any third party to establish mutuality to assert a right of setoff, and (c) distributions out of any insurance policies or proceeds of such policies.

24

*H.        Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and any document or instrument in the Plan Supplement, the terms of the relevant document or instrument in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS,
## PROFESSIONAL FEE CLAIMS, DIP CLAIMS, AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, DIP Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

*A.        General Administrative Claims.*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Wind-Down Debtors, as applicable, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims, the DIP Claims, and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Allowed Administrative Claim in an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim in accordance with the following:  (1) if such Administrative Claim is Allowed on or prior to the Effective Date on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which (i) an order Allowing such Administrative Claim becomes a Final Order, or (ii) the Plan Administrator, on the one hand, and the Holder of the Administrative Claim, on the other hand, agree to the Allowed amount of such claim, or as soon as reasonably practicable thereafter; or (3) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except with respect to Administrative Claims that are Professional Fee Claims, DIP Claims, or subject to section 503(b)(1)(D) of the Bankruptcy Code, and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Wind-Down Debtors no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of occurrence of the Effective Date.  The burden of proof for the allowance of Administrative Claims remains on the Holder of the Administrative Claim.

Objections to such requests must be Filed and served on the Wind-Down Debtors and the requesting party by the Administrative Claims Objection Bar Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be

25

determined by, and satisfied in accordance with an order that becomes a Final Order of, the Bankruptcy Court.

**Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Wind-Down Debtors, or their respective property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Wind-Down Debtors or any notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with the Bankruptcy Court with respect to an Administrative Claim previously Allowed.**

The Wind-Down Debtors or the Plan Administrator (on behalf of the Wind-Down Debtors), may settle Administrative Claims in the ordinary course of business without further Bankruptcy Court approval.

B.    *Professional Fee Claims.*

1.    Final Fee Applications and Payment of Professional Fee Claims.

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than 60 days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. The Wind-Down Debtors shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash to such Professionals, including from funds held in the Professional Fee Escrow Account, when such Professional Fee Claims are Allowed or awarded by entry of an order of the Bankruptcy Court.

2.    Professional Fee Escrow Account.

As soon as is reasonably practicable after the Confirmation Date and no later than the Effective Date, and in consultation with the DIP Lenders, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the benefit of the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been indefeasibly paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, Claims, or Interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. Funds held in the Professional Fee Escrow Account shall not be considered property of the Estates of the Debtors or the Wind-Down Debtors.

The amount of Allowed Professional Fee Claims owing to the Professionals shall be paid in Cash to each such Professional by the Debtors or the Wind-Down Debtors, as applicable, from the funds held in the Professional Fee Escrow Account or the Wind-Down Debtor Account, as applicable, as soon as reasonably practicable after such Professional Fee Claims are Allowed by

71306/0001-53355255v12

an order of the Bankruptcy Court; *provided* that the Debtors' and the Wind-Down Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account. When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining Cash held in the Professional Fee Escrow Account shall promptly be paid to the Wind-Down Debtors and constitute part of the Wind-Down Debtor Assets without any further notice to or action, order, or approval of the Bankruptcy Court.

3. Professional Fee Amount.

The Professionals shall provide a reasonable and good-faith estimate of their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtors no later than 5 days before the anticipated Effective Date; *provided*, *however*, that such estimate shall not be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that may be Allowed pursuant to the Professional's final request for payment of Professional Fee Claims. If a Professional does not provide an estimate, the Debtors or the Wind-Down Debtors, as applicable, may estimate the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account, *provided* that the Wind-Down Debtors shall use Cash on hand or from the Wind-Down Debtor Account to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

4. Post-Confirmation Date Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors or the Wind-Down Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors or the Wind-Down Debtors. If the Debtors or the Wind-Down Debtors (as applicable) dispute the reasonableness of any such invoice, the Debtors or the Wind-Down Debtors (as applicable) or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Wind-Down Debtors or the Plan Administrator, as applicable, may employ and pay any professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding anything in this Plan, nothing alters the terms of the A&M Order and the requirement to seek approval of the Completion Fee (as defined in the A&M Order) as set forth in the A&M Order.

71306/0001-53355255v12

C.      *DIP Claims.*

On the Effective Date, except to the extent that a Holder of an Allowed DIP Claim agrees to less favorable or alternative treatment, on or before the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for all Allowed DIP Claims, each Holder of an Allowed DIP Claim (which shall include interest, fees, and all other amounts due and owing under the DIP Facility) has consented to receive and shall receive, (i) Cash in an amount necessary to pay the reasonable and documented fees, expenses, and disbursements of the Lender Professionals, to the extent any amount remains outstanding, (ii) Cash proceeds of the Sale Transactions, (ii) the Deemed DIP Paydown Amount, and (iii) the Distributable Value under the Distributable Waterfall, until such Allowed DIP Claim is indefeasibly paid in full, but at all times subject to the Distributable Waterfall.  The DIP Liens shall remain in place until the Allowed DIP Claims are indefeasibly paid in full.  For the avoidance of doubt, any distribution made pursuant to verse (i) above shall be made directly to the applicable Lender Professional and not to the Holder of an Allowed DIP Claim.

D.      *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

E.      *Statutory Fees.*

The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-PCR. On and after the Effective Date, the Wind-Down Debtors or Liquidating Trustee, as applicable, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  All Quarterly Fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date (or funded by the Wind-Down Debtors and disbursed by the Disbursing Agent on behalf of each of the Wind-Down Debtors). After the Effective Date, each of the Wind-Down Debtors or the Liquidating Trust shall be severally (but not jointly and severally) liable to pay Quarterly Fees for the disbursements made by such Wind-Down Debtor (or Disbursement Agent on behalf of the Wind-Down Debtors) or Liquidating Trust (or the Liquidating Trustee or Disbursement Agent on behalf of the Liquidating Trustee, if applicable), in full in cash when due and payable in the applicable Debtor's or Wind-Down Debtor's Chapter 11 Case for each quarter (including any fraction thereof) until the earliest of the applicable Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code; *provided that* the several (rather than joint and several) nature of those parties' liability for Quarterly Fees shall not be binding upon the U.S. Trustee in carrying out his responsibilities for billing and collecting fees pursuant to 28 U.S.C. § 1930(a)(6) until the earliest of a particular Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. For the avoidance of doubt, the Liquidating Trust Contribution disbursed to the Liquidating Trust upon the Effective Date will be included in the calculation of the Quarterly Fees payable to the U.S. Trustee by the Debtors for the quarter in which the Effective Date occurs, and neither the Debtors, the Wind-Down

28

71306/0001-53355255v12

Debtors, nor the Liquidating Trust will be responsible for any statutory fees based on the Liquidating Trust's subsequent distribution of such Cash.  If other Liquidating Trust Assets are liquidated and disbursed, the Liquidating Trustee shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  The U.S. Trustee may assess Quarterly Fees against the Liquidating Trust upon the liquidation and disbursement of such assets, and the Liquidating Trust's rights to contest the assessment and/or amount of such fees are expressly preserved.  Notwithstanding the foregoing, any Quarterly Fee assessed on account of the Liquidating Trust Assets shall be paid by the Liquidating Trust, and the Wind-Down Debtors shall have no obligation to pay such fees (if any).  The U.S. Trustee shall not be required to file any proof of claim or any other request(s) for payment with respect to Quarterly Fees in these Chapter 11 Cases and shall not be treated as providing any release under the Plan. The provisions of this paragraph shall control notwithstanding any other provision(s) in the Plan to the contrary.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

*A.*      *Classification of Claims and Interests.*

Except for the Claims addressed in Article II hereof, all Claims and Interests are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest, qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth below.  The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.  All of the potential Claims for the Debtors are set forth herein.

| Class | Claim/Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Secured Tax Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 4 | First Lien Claims | Impaired | Entitled to Vote |

29

| 5 | Second Lien Claims | Impaired | Entitled to Vote |
| 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| 7 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 8 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 9 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 10 | 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

**B.** *Treatment of Claims and Interests.*

Subject to Article VI hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release of, and exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors and the Holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

1.  Class 1 – Secured Tax Claims.

(a)   *Classification*:  Class 1 consists of all Secured Tax Claims.

(b)   *Treatment*:  Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for such Secured Tax Claim, on or as soon as reasonably practicable after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of a Secured Tax Claim shall receive, at the option of the Plan Administrator:

(i)   payment in full in Cash of such Holder's Allowed Secured Tax Claim;

(ii)   equal semi-annual Cash payments commencing as of the Effective Date or as soon as reasonably practicable thereafter and continuing for five years, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-default rate under non-bankruptcy law, subject to the option of the

71306/0001-53355255v12

Plan Administrator to prepay the entire amount of such Allowed Secured Tax Claim during such time period.

(c) *Voting*: Class 1 is Unimpaired under the Plan. Each Holder of a Class 1 Secured Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each Holder of a Class 1 Secured Tax Claim is not entitled to vote to accept or reject the Plan.

2. Class 2 – Other Secured Claims.

(d) *Classification*: Class 2 consists of all Other Secured Claims.

(e) *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for such Allowed Other Secured Claim, on or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtors or Wind-Down Debtors:

(i) payment in full in Cash of such Holder's Allowed Other Secured Claim;

(ii) the collateral securing such Holder's Allowed Other Secured Claim;

(iii) Reinstatement of such Holder's Allowed Other Secured Claim pursuant to section 1124 of the Bankruptcy Code; or

(iv) such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(f) *Voting*: Class 2 is Unimpaired under the Plan. Each Holder of a Class 2 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each Holder of a Class 2 Other Secured Claim is not entitled to vote to accept or reject the Plan.

3. Class 3 – Other Priority Claims.

(a) *Classification*: Class 3 consists of all Other Priority Claims.

(b) *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for such Allowed Other Priority Claim, on or as soon as reasonably

31

practicable after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of an Allowed Administrative, Allowed Priority Tax Claim, or Allowed Other Claims, will either be satisfied in full, in Cash, or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

(c) *Voting*: Class 3 is Unimpaired under the Plan. Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

4. Class 4 – First Lien Claims.

(a) *Classification*: Class 4 consists of all First Lien Claims.

(b) *Allowance*: The First Lien Claims shall be Allowed in an amount equal to [$●].

(c) *Treatment*: Except to the extent that a Holder of an Allowed First Lien Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for such Allowed First Lien Claim, on or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed First Lien Claim shall receive its *pro rata* share of Distributable Value pursuant to the Distributable Waterfall, if any, in accordance with Article II of this Plan; *provided*, *however*, that: (i) in no event shall any Holder of a First Lien Claim receive, on account of such Claim, a recovery greater than 100% of the Allowed amount of such Claim.

(d) *Voting*: Class 4 is Impaired under the Plan. Holders of First Lien Claims are entitled to vote to accept or reject the Plan.

5. Class 5 –Second Lien Claims.

(a) *Classification*: Class 5 consists of all Second Lien Claims.

(b) *Allowance*: The Second Lien Claims shall be Allowed in an amount equal to [$●].

(c) *Treatment*: Except to the extent that a Holder of an Allowed Second Lien Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for such Allowed Second Lien Claim, on or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Second Lien Claim shall receive its *pro rata* share of Distributable Value pursuant to the Distributable Waterfall, if any, in accordance with Articles II and III of this Plan; *provided*, *however*, that in no event shall any Holder of Second

71306/0001-53355255v12

Lien Claim receive, on account of such Claim, a recovery greater than 100% of the Allowed amount of such Claim.

    (d)    *Voting*: Class 5 is Impaired under the Plan. Holders of Second Lien Claims are entitled to vote to accept or reject the Plan.

6.    <u>Class 6 – General Unsecured Claims</u>.

    (a)    *Classification*: Class 6 consists of the General Unsecured Claims.

    (b)    *Allowance*:  The First Lien Deficiency Claim shall be Allowed as a General Unsecured Claim. The Second Lien Deficiency Claim shall be Allowed as a General Unsecured Claim. All other General Unsecured Claims shall be Allowed pursuant to the procedures set forth in this Plan.

    (c)    *Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim and the Debtors or the Liquidating Trustee, as applicable, agree to less favorable treatment for such Holder, in full and final satisfaction of the Allowed General Unsecured Claim, each Holder thereof will receive its *pro rata* share of the Liquidating Trust Interests.

    (d)    *Voting*: Class 6 is Impaired under the Plan. Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan. Solely for the purpose of voting, (a) the First Lien Lenders shall have an Allowed General Unsecured Claim in the amount equal to the First Lien Deficiency Claim Amount as set forth in such definition, and (b) the Second Lien Lenders shall have an Allowed General Unsecured Claim in the amount equal to the Second Lien Deficiency Claim Amount as set forth in such definition.

7.    <u>Class 7 – Intercompany Claims</u>.

    (a)    *Classification*: Class 7 consists of all Intercompany Claims.

    (b)    *Treatment*: Each Allowed Intercompany Claim shall, at the election of the Debtors or Wind-Down Debtors, be (a) Reinstated, (b) converted to equity, (c) otherwise set off, settled, distributed, contributed, cancelled, or released; or (d) otherwise addressed at the option of the Debtors or Wind-Down Debtors without any distribution on account of such Intercompany Claims.

    (c)    *Voting*: Holders of Intercompany Claims are either Unimpaired, and such Holders of Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and such Holders of Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

33

Therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

8. Class 8 – Intercompany Interests.

    (a)    *Classification*:  Class 8 consists of all Intercompany Interests.

    (b)    *Treatment*:  Allowed Intercompany Interests shall, at the election of the Debtors or Wind-Down Debtors, be (a) Reinstated or (b) set off, settled, addressed, distributed, contributed, merged, cancelled, or released, or (c) otherwise addressed at the option of the Wind-Down Debtors or Debtors without any distribution on account of such Intercompany Interests.

    (c)    *Voting*:  Holders of Intercompany Interests are either Unimpaired, and such Holders of Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and such Holders of Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

9. Class 9 – Existing Equity Interests.

    (a)    *Classification*:  Class 9 consists of all Existing Equity Interests.

    (b)    *Treatment*:  On the Effective Date, all Existing Equity Interests shall be cancelled, released, and extinguished, and will be of no further force or effect.  Holders of Interests shall receive no recovery or distribution on account of their Interests.

    (c)    *Voting*:  Class 9 is Impaired under the Plan.  Holders of Existing Equity Interests are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, such Holders of Existing Equity Interests are not entitled to vote to accept or reject the Plan.

10. Class 10 – Section 510(b) Claims.

    (a)    *Classification*:  Class 10 consists of all Section 510(b) Claims.

    (b)    *Treatment*:  On the Effective Date, all Section 510(b) Claims shall be cancelled, released, and extinguished, and will be of no further force or effect.  Holders of Section 510(b) Claims shall not receive recovery or distribution on account of such Claims.

    (c)    *Voting*:  Class 10 is Impaired under the Plan.  Holders of Section 510(b) Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

71306/0001-53355255v12

C.      *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors', the Wind-Down Debtors', the Plan Administrator's, or the Liquidating Trustee's rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired. Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

D.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B herein.   The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X herein to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

E.      *Subordinated Claims.*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors, the Wind-Down Debtors, the Plan Administrator, or the Liquidating Trustee (as applicable) reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

F.      *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code. To the extent a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, such Class shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

71306/0001-53355255v12

G.     *Intercompany Interests.*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are being received by Holders of such Intercompany Interests solely to use certain funds and assets as set forth in the Plan to make certain distributions and satisfy certain obligations of certain other Debtors and Wind-Down Debtors to the Holders of certain Allowed Claims and otherwise for uses as are contemplated by the Plan, in each case, in accordance with the terms of the applicable Sale Order.

H.     *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

I.     *Insurance.*

Notwithstanding anything to the contrary in the Plan, if any Claim is subject to coverage under an Insurance Policy, payments on account of such Claim will first be made from proceeds of such Insurance Policy in accordance with the terms thereof, with the balance of such Claim, if any, treated in accordance with the provisions of the Plan governing the Class applicable to such Claim.

If a Claim may be covered by an Insurance Policy that has a self insured retention (an "SIR") or deductible (a "Deductible"), the Allowed amount of such Claim that is within the applicable SIR or Deductible shall constitute an Allowed General Unsecured Claim against the applicable Debtor's Estate. Such SIR or Deductible shall be considered satisfied pursuant to this Plan through allowance of such General Unsecured Claim solely in the amount of the applicable SIR or Deductible; *provided*, *however*, that nothing herein obligates the Liquidating Trust to otherwise satisfy any SIR or Deductible under any Insurance Policy. Any recovery on account of a Claim, that may be payable, in full or in part, pursuant to the terms and conditions of one of the Debtors' Insurance Policies in excess of the SIR or Deductible shall be payable pursuant to the terms and conditions of the applicable Insurance Policy, if any.  Nothing in this Plan shall (1) be construed to limit, extinguish, or diminish the insurance coverage that may exist or shall be construed as a finding that liquidated any Claim payable pursuant to an Insurance Policy, (2) alter or modify the terms and conditions of any Insurance Policy, or (3) be a determination that any Insurance Policy is an Executory Contract or is capable of assumption or rejection. In no event shall the Debtors or the Liquidating Trust be required to pay any amounts within a SIR or Deductible, including defense costs, other than though the allowance of a General Unsecured Claim up to the amount of the applicable SIR or Deductible.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.     *Sources of Consideration for Plan Distributions.*

Distributions on account of the DIP Claims, First Lien Claims, and Second Lien Claims shall be funded by the Debtors and the Wind-Down Debtors, as applicable, consistent with the

36

Plan, *provided, however*, to the extent any of the preceding Claims are satisfied in whole or in part from the Blue Apron Deferred Payments, such Claims shall be funded by Blue Apron or Wonder Group, Inc, or an affiliate thereof.  The applicable Purchaser shall be responsible for payment of all Allowed Claims that constitute Assumed Liabilities under any Purchase Agreement.  Administrative Claims, Priority Tax Claims and Secured Tax Claims, Other Secured Claims, and Other Priority Claims which were not assumed by any Purchaser, shall be funded by the Debtors with Cash on hand or through the Administrative Claims Reserve Amount under the Wind-Down Budget, on the Effective Date or shortly thereafter consistent with the Plan.  The Liquidating Trustee shall fund distributions to all other Holders of Allowed General Unsecured Claims under the Plan with the Liquidating Trust Assets, in each case in a manner consistent with the Plan.

B.      *Vesting of Assets.*

On the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, (i) the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all Claims, Liens, encumbrances, charges, and other interests except as otherwise expressly provided in this Plan; and (ii) the Plan Administration Assets shall vest in the Wind-Down Debtors free and clear of all Claims, Liens, encumbrances, charges, and other interests except for those concerning the DIP Claims, the First Lien Claims, and the Second Lien Claims, or as otherwise expressly provided in this Plan.

C.      *Wind-Down Debtors.*

The Debtors shall continue in existence after the Effective Date as the Wind-Down Debtors solely for the purposes of (i) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible, and liquidating all Wind-Down Debtor Assets, (ii) performing any remaining obligations under the TSA; (iii) enforcing and prosecuting Claims, interests, rights, and privileges under the Wind-Down Debtor Retained Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed by the First Lien Lenders and Second Lien Lenders to outweigh the costs associated therewith; (iv) resolving any Disputed non-General Unsecured Claims, (v) paying or otherwise satisfying Allowed non-General Unsecured Claims, (vi) filing appropriate tax returns (and, for the avoidance of doubt, may pursue any refunds, credits, or other tax benefits to which the Debtors and/or the Wind-Down Debtor are entitled and file any tax returns or other filings as are required in connection therewith), (vii) complying with its continuing obligations under the Asset Purchase Agreements, if any, (viii) otherwise administering the Plan in an efficacious manner, and (ix) undertaking any restructuring transactions as are necessary or advisable in connection with the foregoing.  The Wind-Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to File motions or substitutions of parties or counsel in each such matter.

On the Effective Date, the Wind-Down Debtor Assets shall vest in the Wind-Down Debtors for the primary purpose of administering the Wind-Down Debtors' Estates, which may

37

71306/0001-53355255v12

include liquidating the Wind-Down Debtor Assets and winding down the Debtors' Estates, with no objective to continue or engage in the conduct of a trade or business, other than performance under the TSA. In consultation with the DIP Agent, the First Lien Agent and the Second Lien Agent, the Wind-Down Debtors will, in an expeditious but orderly manner, liquidate and convert to Cash the Wind-Down Debtor Assets, make timely distributions pursuant to the Plan and Confirmation Order, and not unduly prolong its duration, provided that the DIP Agent and First Lien Agent shall have sole discretion over the Wind-Down Debtors' and Plan Administrator's pursuit, settlement or compromise of the Directed 1L Priority Collateral, and only after the First Lien Obligations have been paid in full, then the Second Lien Agent shall have sole discretion over the Wind-Down Debtors' and Plan Administrator's pursuit, settlement or compromise of any residual Directed 1L Priority Collateral. The Wind-Down Debtor Assets shall be held free and clear of all Liens, Claims, and interests of Holders of Claims and Interests, except as otherwise provided in the Plan. The Wind-Down Debtors shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

*D.    Plan Administrator.*

On the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of each of the Debtors shall be deemed to have been terminated and such persons shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed by each Debtor, subject to the consent of the DIP Agent, the First Lien Agent and the Second Lien Agent, as the sole director and the sole officer of such Wind-Down Debtor and shall succeed to the powers of such Debtor's directors and officers. The Plan Administrator shall be the sole representative of, and shall act for each Wind-Down Debtor in the same fiduciary capacity as applicable to a board of managers and officers, subject to the provisions hereof (and all Governance Documents are deemed amended by the Plan to permit and authorize the same).

The Debtors shall include, in the Plan Supplement, the information set forth in Sections 1129(a)(4) and (5) of the Bankruptcy Code and the identity of the Person or Entity that the Debtors have selected as the Plan Administrator. The appointment of the Plan Administrator shall be approved in the Confirmation Order, and such appointment shall be effective as of the Effective Date.

1.  The Plan Administrator Agreement

Prior to or on the Effective Date, the Debtors shall execute a Plan Administrator Agreement in substantially the same form as set forth in the Plan Supplement. Any nonmaterial modifications to the Plan Administrator Agreement made by the Debtors prior to the Effective Date, which shall be subject to the consent of the DIP Agent, the First Lien Agent and the Second Lien Agent, are hereby ratified. The Plan Administrator Agreement will contain provisions permitting the amendment or modification of the Plan Administrator Agreement as necessary to implement the provisions of the Plan.

71306/0001-53355255v12

2. Rights, Powers, and Duties of the Debtors and Plan Administrator

On and after the Effective Date, the Plan Administrator will act for the Post-Effective Date Debtors in the same capacity as applicable to a board of managers or directors, or to officers, subject to the provisions of the Plan. All certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same without further action by any Entity and without Bankruptcy Court approval. From and after the Effective Date, the Plan Administrator will be the sole representative of, and will act for, the Wind-Down Debtors. Except as otherwise provided in the Plan, the Confirmation Order, or the Plan Administrator Agreement, the Plan Administrator shall be authorized and directed to take all corporate actions consistent with the Plan, the Confirmation Order, any Asset Purchase Agreements, all other applicable orders of the Bankruptcy Court, and the Plan Administrator Agreement, in each case, that are necessary and/or desirable to effectuate the terms of the Plan on behalf of the Wind-Down Debtors and use its reasonable best efforts to assist with or effectuate the transition of the Debtors' business, wind down, dissolution, or liquidation of the Wind-Down Debtors. In taking such actions, the Plan Administrator may control and exercise authority over any Assets, vested in the Wind-Down Debtors pursuant to the Plan, over the acquisition, management, and disposition thereof and over the management and conduct of the affairs of the Wind-Down Debtors. Such rights, powers and duties, which shall be exercisable by the Plan Administrator on behalf of the Wind-Down Debtors pursuant to the Plan and the Plan Administrator Agreement, shall include, among others, (a) making distributions to Holders of Allowed Claims and Interests as provided for in the Plan (except for Allowed General Unsecured Claims), (b) administering, reconciling and resolving (i) Administrative Claims, Secured Claims, and Priority Tax Claims, and (ii) upon one (1) business days' notice to the Liquidating Trustee, DIP Claims, First Lien Claims, Second Lien Claims, and Other Priority Claims, (c) filing tax returns and paying taxes, (d) commencing and pursuing the Wind-Down Debtor Retained Causes of Action constituting Plan Administration Assets and managing and administering any proceeds thereof, (e) paying certain Quarterly Fees, (f) defending the Debtors in any pending or future litigation, (g) selling, abandoning, or otherwise fully administering the Estates, (h) in consultation with the Liquidating Trustee, closing the Chapter 11 Cases, (i) dissolving the Wind-Down Debtors, and (j) performing other duties and functions that are consistent with the implementation of the Plan.

For the avoidance of doubt, the Plan Administrator shall administer the Wind-Down Debtors and the Plan in accordance with the Wind-Down Budget and shall have the authority to authorize, make, or cause to be made payments in accordance with the Wind-Down Budget. The Plan Administrator shall use commercially reasonable efforts to adhere to (or outperform) the Wind-Down Budget; provided that the Plan Administrator shall have the authority to reallocate funding between line items within the Wind-Down Budget without further order of the Court, but in all cases in consultation with the DIP Agent, the First Lien Agent, and the Second Lien Agent, provided that if the Directed 1L Priority Collateral is a Wind-Down Debtor Asset, the Plan Administrator shall obtain the consent of the DIP Agent and the First Lien Agent prior to reallocation of any funding relating to recovery of the Directed 1L Priority Collateral.

In pursuing any Wind-Down Debtor Retained Causes of Action transferred to the Plan Administrator, on behalf of the Wind-Down Debtors, under this Plan, the Plan Administrator shall be deemed a trustee for all purposes under Section 108 of the Bankruptcy Code, shall be

39

71306/0001-53355255v12

entitled to the tolling provisions provided under Section 108 of the Bankruptcy Code, and shall succeed to the Debtors' rights with respect to the periods in which any of the Wind-Down Debtor Retained Causes of Action transferred to the Plan Administrator, on behalf of the Wind-Down Debtors, may be brought under Section 546 of the Bankruptcy Code.

The Plan Administrator shall have the right, in consultation with the First Lien Agent and Second Lien Agent, to retain the services of attorneys, accountants, and other professionals that, in the reasonable discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties.  The reasonable fees and expenses of such professionals shall be paid by the Wind-Down Debtors, upon the monthly submission of statements to the Plan Administrator and in accordance with the Wind-Down Budget.  The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

The Plan Administrator and all professionals retained by the Plan Administrator shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by each Wind-Down Debtor.  The Plan Administrator may rely upon written information previously generated by the Debtors.

3. Compensation of the Plan Administrator

The Plan Administrator shall be compensated pursuant to the terms of the Plan Administrator Agreement; *provided that* the Plan Administrator shall be permitted to use the Wind-Down Amount, which has been allocated and approved pursuant to the Approved Budget, to pay the Plan Administrator's fees and expenses as set forth in the Plan Administrator Agreement.

4. Insurance for the Plan Administrator

The Plan Administrator shall be authorized to obtain and pay for out of the Wind-Down Amount all reasonably necessary insurance coverage for itself, its agents, representatives, employees or independent contractors, and the Wind-Down Debtors, including, but not limited to, coverage with respect to (a) any property that is or may in the future become the property of the Debtors or their Estates and (b) the liabilities, duties and obligations of the Plan Administrator and its agents, representatives, employees or independent contractors under the Plan Administrator Agreement (in the form of an errors and omissions policy or otherwise), the latter of which insurance coverage may remain in effect for a reasonable period of time as determined by the Plan Administrator after the termination of the Plan Administrator Agreement. The Plan Administrator may also obtain, at the expense of the Wind-Down Debtors, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtors.

5. Transition Services

On the Effective Date, the Plan Administrator shall serve as an appointed agent of the designated operator or as the operator of the Debtors in accordance with the Plan for the purposes of fulfilling any obligations under the TSA.

71306/0001-53355255v12

6.   Termination of the Plan Administrator's Responsibilities and Obligations

Upon the conclusion of the Plan Administrator's obligations under the post-Effective Date Wind Down in accordance with the Plan and Plan Administrator Agreement, the Plan Administrator shall remit any remaining balance of the Wind-Down Account Amount to the DIP Lenders or Prepetition Secured Parties, as applicable, for distribution pursuant to the terms of this Plan.

E.    *Liquidating Trust.*

1.   Establishment of the Liquidating Trust

On the Effective Date, the Liquidating Trust will be established pursuant to the Liquidating Trust Agreement, which will be Filed with the Bankruptcy Court as part of the Plan Supplement. Upon establishment of the Liquidating Trust, title to the Liquidating Trust Assets shall be deemed transferred to the Liquidating Trust without any further action of the Debtors or any managers, employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtors.

The Liquidating Trust Interests to be distributed to Liquidating Trust Beneficiaries under this Plan shall not constitute "securities" under applicable securities laws and shall represent only the right to receive distributions from the Liquidating Trust in accordance with the Liquidating Trust Agreement. The Liquidating Trust Interests shall be non-transferable, except as required by law or as provided in the Liquidating Trust Agreement.

2.   Transfer of the Liquidating Trust Assets

Pursuant to section 1141 of the Bankruptcy Code, all property transferred to the Liquidating Trust shall be made free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as may be otherwise provided for in this Plan. Upon completion of the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors will have no further interest in, or with respect to, the Liquidating Trust Assets or the Liquidating Trust. For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust in accordance with the terms herein as a transfer to the Liquidating Trust Beneficiaries, followed by a transfer of such assets by such Liquidating Trust Beneficiaries to the Liquidating Trust, and the Liquidating Trust Beneficiaries will be treated as the grantors and owners thereof.

3.   Liquidating Trust Agreement

On the Effective Date, the Debtors shall execute the Liquidating Trust Agreement in substantially the same form as set forth in the Plan Supplement. Any nonmaterial modifications to the Liquidating Trust Agreement made by the Debtors, subject to the reasonable consent of the First Lien Agent and the Second Lien Agent, will be ratified. The Liquidating Trust Agreement will contain provisions permitting the amendment or modification of the Liquidating Trust Agreement necessary to implement the provisions of the Plan.

41

4.    Purpose of the Liquidating Trust

The Liquidating Trust shall be established for, among other purposes, the purpose of (a) receiving and holding the Liquidating Trust Assets; (b) administering, disputing, objecting to, compromising, or otherwise resolving all Claims and Interests other than (i) DIP Claims, (ii) First Lien Claims, (iii) Second Lien Claims, (iv) Administrative Claims, (v) Secured Claims, (vi) Priority Tax Claims, and (vii) Prepetition Deficiency Claims; (c) making distributions to the Liquidating Trust Beneficiaries in accordance with this Plan and the Liquidating Trust Agreement; (d) maximizing recoveries for the benefit of the Liquidating Trust Beneficiaries; and (e) commencing and pursuing the Liquidating Trust Retained Causes of Action constituting Liquidating Trust Assets, if any, and managing and administering any proceeds thereof with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d).

The Liquidating Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust Beneficiaries treated as grantors and owners of the Liquidating Trust. To the extent permitted by applicable law, all parties, including the Liquidating Trustee and any Liquidating Trust Beneficiaries, shall report consistently with the foregoing for all applicable tax reporting purposes (including consistent reporting for valuation purposes).

5.    Liquidating Trustee

Upon the occurrence of the Effective Date, the Liquidating Trustee shall be deemed appointed to serve as the trustee and administrator of the Liquidating Trust established pursuant to the Plan and the Liquidating Trust Agreement. The Liquidating Trustee, subject to the terms and conditions of the Plan, the Plan Supplement, the Confirmation Order, and the Liquidating Trust Agreement, shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights, and obligations set forth in the Plan and the Liquidating Trust Agreement, as applicable. The Liquidating Trustee shall owe fiduciary duties solely to the Liquidating Trust Beneficiaries and shall act in the best interests of such Liquidating Trust Beneficiaries in connection with the foregoing and the administration, monetization or distribution of any Liquidating Trust Assets.

In pursuing any Liquidating Trust Retained Causes of Action constituting Liquidating Trust Assets, the Liquidating Trustee shall be deemed a trustee for all purposes under Section 108 of the Bankruptcy Code, shall be entitled to the tolling provisions provided under Section 108 of the Bankruptcy Code, and shall succeed to the Debtors' rights with respect to the periods in which any of the Liquidating Trust Retained Causes of Action constituting Liquidating Trust Assets may be brought under Section 546 of the Bankruptcy Code.

The Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement. The Liquidating Trustee shall fully comply with the terms, conditions and rights set forth in this Plan, the Plan Supplement, the Confirmation Order, and the Liquidating Trust

42

Agreement. The Liquidating Trustee (and any professionals retained by the Liquidating Trustee) shall not be required to File a fee application to receive compensation.

The Liquidating Trustee shall have the right, and subject to any consent or consultation rights as set forth in the Liquidating Trust Agreement, and without Bankruptcy Court approval, to retain the services of attorneys, accountants, and other professionals and agents, to assist and advise the Liquidating Trustee in the performance of his, her, or its duties, and to compensate and reimburse expenses of such professionals in accordance with the Liquidating Trust Agreement.

### 6.   Liquidating Trust Insurance

The Liquidating Trustee shall be authorized to obtain and pay for out of the Liquidating Trust Assets all reasonably necessary insurance coverage for itself, its agents, representatives, employees or independent contractors, including, but not limited to, coverage with respect to (a) any property that is or may in the future become the property of the Debtors or their Estates and (b) the liabilities, duties and obligations of the Liquidating Trustee and its agents, representatives, employees or independent contractors under the Liquidating Trust Agreement (in the form of an errors and omissions policy or otherwise), the latter of which insurance coverage may remain in effect for a reasonable period of time as determined by the Liquidating Trustee after the termination of the Liquidating Trust Agreement.

### 7.   U.S. Federal Income Tax Treatment and Reporting of Liquidating Trust

The Debtors expect to treat the Liquidating Trust as a "liquidating trust" under section 301.7701-4(d) of the Treasury Regulations and a grantor trust under section 671 of the Tax Code, and the trustee of any Liquidating Trust will take a position on the Liquidating Trust's tax return accordingly.   For U.S. federal income tax purposes, the transfer of assets to the Liquidating Trust will be deemed to occur as (a) a first-step transfer of the Liquidating Trust Assets to the Holders of the applicable Claims, and (b) a second-step transfer by such Holders to the Liquidating Trust.

No request for a ruling from the IRS will be sought on the classification of the Liquidating Trust.  Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust.  If the IRS were to successfully challenge the classification of the Liquidating Trust as a grantor trust, the federal income tax consequences to the Liquidating Trust and the Liquidating Trust beneficiaries could vary from those discussed in the Plan (including the potential for an entity-level tax).  For example, the IRS could characterize the Liquidating Trust as a so-called "complex trust" subject to a separate entity-level tax on its earnings, except to the extent that such earnings are distributed during the taxable year.

As soon as possible after the transfer of the Liquidating Trust Assets to the Liquidating Trust, the trustee(s) of the Liquidating Trust shall make a good faith valuation of the Liquidating Trust Assets.  This valuation will be made available from time to time, as relevant for tax reporting purposes.  Each of the Debtors, the trustee(s) of the Liquidating Trust, and the holders of Claims receiving interests in the Liquidating Trust shall take consistent positions with respect

43

to the valuation of the Liquidating Trust Assets, and such valuations shall be utilized for all U.S. federal income tax purposes.

Allocations of taxable income of the Liquidating Trust among the Liquidating Trust beneficiaries shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value) to the Liquidating Trust beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets shall equal their fair market value on the date of the transfer of the Liquidating Trust Assets to the Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the Tax Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

The Liquidating Trust shall in no event be dissolved later than 5 years from the creation of such Liquidating Trust unless the Bankruptcy Court, upon motion within the 6 month period prior to the fifth anniversary (or within the 6 month period prior to the end of an extension period), determines that a fixed period extension (not to exceed 5 years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the trustee(s) of the Liquidating Trust that any further extension would not adversely affect the status of the trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

The Liquidating Trust will file annual information tax returns with the IRS as a grantor trust pursuant to section 1.671-4(a) of the Treasury Regulations that will include information concerning certain items relating to the holding or disposition (or deemed disposition) of the Liquidating Trust Assets (e.g., income, gain, loss, deduction and credit). Each Liquidating Trust beneficiary holding a beneficial interest in the Liquidating Trust will receive a copy of the information returns and must report on its federal income tax return its share of all such items. The information provided by the Liquidating Trust will pertain to Liquidating Trust beneficiaries who receive their interests in the Liquidating Trust in connection with the Plan.

8.   Disputed Ownership Fund Treatment

With respect to any of the assets of the Liquidating Trust that are subject to potential disputed claims of ownership or uncertain distributions, or to the extent "liquidating trust" treatment is otherwise unavailable or not elected to be applied with respect to the Liquidating Trust, the Debtors intend that such assets will be subject to disputed ownership fund treatment under section 1.468B-9 of the Treasury Regulations, that any appropriate elections with respect thereto shall be made, and that such treatment will also be applied to the extent possible for state and local tax purposes. Under such treatment, a separate federal income tax return shall be filed with the IRS for any such account. Any taxes (including with respect to interest, if any, earned in the account) imposed on such account shall be paid out of the assets of the respective account

44

71306/0001-53355255v12

(and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes).

F.      *Corporate Existence Post-Effective Date*

    1.      Directors and Officers

Immediately following the occurrence of the Effective Date, (i) the respective boards of directors or managers, as applicable, and the current officers, of each of the Debtors, shall be terminated without cause and such members of the boards of directors or managers, as applicable, and the current officers of the Debtors shall be deemed to have resigned; and (ii) the Plan Administrator shall: (1) be appointed as the sole member of the board of directors or board of managers, as applicable, and the sole officer; (2) succeed as the sole Holder of Interests in each Wind-Down Debtor; (3) have the rights and powers of a debtor in possession under Section 1107 of the Bankruptcy Code; (4) be a "representative of the estate" pursuant to Section 1123(b)(3) of the Bankruptcy Code; (5) be vested with the rights, powers, and benefits afforded to a "trustee" under Sections 704 and 1106 of the Bankruptcy Code; and (6) have such other rights, powers, and duties incidental to causing performance of the obligations under the Plan or otherwise as may be reasonably necessary. All certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same without further action by any Entity and without Bankruptcy Court approval.

    2.      Organizational Governance Documents

Immediately following the occurrence of the Effective Date, the Wind-Down Debtors shall continue to exist in accordance with the laws of their respective states of formation and pursuant to their respective certificates of incorporation, by-laws, articles of formation, operating agreements, and other organizational documents in effect prior to the Effective Date, except to the extent such organizational documents are amended under the Plan, for the limited purposes of liquidating all of the assets of the Estates and making distributions in accordance with the Plan.  The Wind-Down Debtors shall exist for the limited purposes of fully administering the Estates.  Promptly after performing all duties and functions that are consistent with the implementation of the Plan, the Confirmation Order, and the Plan Administrator Agreement, the Plan Administrator shall be authorized and directed to take all actions to wind down, dissolve, or liquidate the Wind-Down Debtors without the necessity for any other or further actions to be taken by or on behalf of such dissolving Wind-Down Debtors or any payments to be made in connection therewith, other than the filing of a certificate of dissolution with the appropriate governmental authorities, pursuant to Section 303 of the Delaware General Corporation Law codified at title 8 of the Delaware Code or other applicable state law.

The certificate and articles of in-corporation and by-laws of each Wind-Down Debtor shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code and shall include, among other things, a provision (a) prohibiting the issuance of non-voting equity securities under Section 1123(a)(6) of the Bankruptcy Code and (b) limiting the activities of the Wind-Down Debtors to matters authorized under the Plan.

71306/0001-53355255v12

G.      *Statutory Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases, including the Committee, shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases, except in connection with applications for compensation and objections thereto.  The Wind-Down Debtors shall no longer be responsible for paying any fees or expenses incurred by any statutory committee, including the Committee, after the Effective Date, except in connection with (y) applications for payment of any fees or expenses for services rendered prior to the Effective Date that are Allowed by the Bankruptcy Court; and (z) responding to objections to its applications for payment of fees and expenses rendered prior to the Effective Date.

H.      *Cancellation of Securities and Agreements.*

On the Effective Date, except as otherwise specifically provided for in the Plan:  (1) the obligations of the Debtors under the Prepetition Loan Documents and any other certificate, Security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except (i) such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan and (ii) any indemnification obligations set forth in Article V.E hereof) shall be cancelled solely as to the Debtors and their Affiliates, and the Wind-Down Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors and their Debtor affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds (but not including any surety bonds issued on behalf of any of the Debtors), indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged, provided that, notwithstanding the foregoing, the liens supporting the First Lien Obligations and the Second Lien Obligations shall remain in place until such Obligations are either paid in full or to the extent there is no further collateral to support such obligations, satisfied in accordance with this Plan. Notwithstanding the foregoing, (a) no executory contract or unexpired lease that has been, or will be, assumed pursuant to section 365 of the Bankruptcy Code shall be terminated or cancelled on the Effective Date, and (b) no Prepetition Loan Document shall be cancelled to the extent such document evidences indebtedness and/or grants a Prepetition Secured Party a security interest in the Debtors' or Wind-Down Debtors' property.

I.      *Corporate Action.*

Upon the Effective Date, by virtue of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by the Plan Administrator or the Liquidating Trustee) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, Wind-Down Debtors, or any other Entity or Person.  All matters provided for in this

46

71306/0001-53355255v12

Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Debtors or the Estates.

*J.      Effectuating Documents; Further Transactions.*

On and after the Effective Date the Plan Administrator and the Agents may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Confirmation Order, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan or the Confirmation Order.

*K.      Section 1146 Exemption.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to the Wind-Down Debtor or to any other Person or from any of the Wind-Down Debtors to the Liquidating Trust or any other Person) of property under the Plan or pursuant to:  (1) the issuance, distribution, transfer, or exchange of any debt, equity security, property, or other interest in the Debtors or the Wind-Down Debtors; (2) any Sale Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate or bulk transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.  No provision of the Plan or of the Confirmation Order shall be construed to broaden the tax exemption under section 1146(a) beyond what the statute allows.

*L.      Causes of Action.*

Except as otherwise provided in Article IX herein or in any contract, instrument, release, or agreement entered into in connection with the Plan or the Sale (including the Asset Purchase Agreement), in accordance with section 1123(b) of the Bankruptcy Code, (a)(i) all Liquidating

47

Trust Retained Causes of Action constituting Liquidating Trust Assets are preserved and transferred to the Liquidating Trust on the Effective Date and (ii) all Wind-Down Debtor Retained Causes of Action constituting Plan Administration Assets are preserved and transferred to the Wind-Down Debtors on the Effective Date, and (b) all Causes of Action constituting Acquired Assets are preserved and transferred to the applicable purchaser (to the extent not previously transferred).

*M.* *Books and Records.*

On the Effective Date, each of the Liquidating Trust and Plan Administrator shall: (a) take possession of all books, records, and files of the Debtors and the Estates that were not sold and transferred in connection with any Asset Purchase Agreement and that relate to the operation and business of the Liquidating Trust or Wind-Down Debtors; and (b) provide for the retention and storage of such books, records, and files until such time as the Liquidating Trustee and Plan Administrator, determines, in accordance with the Liquidating Trust Agreement and Plan Administrator Agreement, that retention of same is no longer necessary or beneficial.

*N.* *Insurance Claims: Business Interruption Insurance Claims, D&O Claims and Others.*

Nothing in this Plan or Confirmation Order shall affect, impair or diminish in any form the Business Interruption Insurance Claims or any rights thereto. Similarly, any rights and Claims under any applicable Business Interruption Insurance Policies shall not be affected, impaired or diminished by operation of the Plan or Confirmation Order. For the avoidance of doubt, the foregoing shall not limit the availability of coverage under any applicable Business Interruption Insurance Policies of the Debtors.

To the extent any D&O Claims are designated as Liquidating Trust Retained Causes of Action or Wind-Debtor Retained Causes of Action, nothing in this Plan, including the releases provided under Article VIII of the Plan, shall have the effect of prohibiting the initiation or continuation of an action by the Plan Administrator or Liquidating Trustee up to and through the entry of a judgment or settlement against any D&O Party. No D&O Party shall be released or absolved from the legal obligation to pay as a result of any D&O Claims for which such D&O Party is responsible for an insurable loss under the D&O Liability Insurance Policies under which the D&O Party is insured; provided, however, that such D&O Party shall not be liable for any D&O Claims to the extent, and only to the extent, such D&O Claims exceed the amounts paid by the Insurer pursuant to the applicable D&O Liability Insurance Policies. For the avoidance of doubt, the foregoing shall not limit the availability of coverage under any applicable Insurance Policies of the Debtors (including, for the avoidance of doubt, any defense costs, professional fees, indemnification or other disbursements payable from insurance).

For the avoidance of doubt, nothing in this Plan shall: (a) constitute a discharge of any D&O Party for the purposes of the D&O Liability Insurance Policies; (b) be deemed to trigger any policy exclusion, including without limitation any exclusions for amounts for which an insured is "absolved from payment"; and (c) impair the obligations of an Insurer to pay any covered "Loss" on behalf of any "Insured" under the D&O Liability Insurance Policies.

71306/0001-53355255v12

The Wind-Down Debtors, the Plan Administrator, and the Liquidating Trust (if applicable) shall use commercially reasonable efforts to cooperate with the DIP Agent and the First Lien Agent in providing information and documents and in pursuing proceeds under the Insurance Collateral to the extent practicable. The extent and specifics of such cooperation shall be governed by the Liquidating Trust Agreement and Plan Administrator Agreement, as applicable, which shall be included in the Plan Supplement.

O.      *Section 1145 Exemption.*

Pursuant to section 1145 of the Bankruptcy Code and, to the extent that section 1145 of the Bankruptcy Code is inapplicable, section 4(a)(2) of the Securities Act, the issuance of any Interests pursuant to the Plan is exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable United States, state, or local Law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security.  As long as the exemption to registration under section 1145 of the Bankruptcy Code is applicable, Interests issued pursuant to the Plan are not "restricted securities" (as defined in rule 144(a)(3) under the Securities Act) and are freely tradable and transferable by any initial recipient thereof that (x) is not an "affiliate" of the Wind-Down Debtors (as defined in rule 144(a)(1) under the Securities Act), (y) has not been such an "affiliate" within 90 days of such transfer, and (z) is not an entity that is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein or in the Sale Orders, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease is:  (1) the TSA; (2) the subject of a motion to assume (or assume and assign) such Executory Contract that is pending on the Confirmation Date; (3) a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (4) an Insurance Policy; (5) an Asset Purchase Agreement; or (6) to be assumed by the Debtors and assigned to any Purchaser in connection with any Sale Transactions and pursuant to any Sale Transactions Documentation or the TSA.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute a Final Order approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases pursuant to the Plan; *provided* that neither the Plan nor the Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under the Sale Orders to assume and assign Executory Contracts and Unexpired Leases to the Purchasers pursuant to the Asset Purchase Agreements.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order but may be withdrawn, settled, or otherwise prosecuted by the Wind-Down Debtors.  Each Executory Contract and Unexpired

49

Lease assumed pursuant to the Plan or by any Final Order, including the Confirmation Order, which has not been assigned to a Purchaser pursuant to the applicable Asset Purchase Agreement or the applicable Sale Order, shall revest in and be fully enforceable by the Wind-Down Debtors in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal Law.

For the avoidance of doubt, this Article V relates to Executory Contracts or Unexpired Leases other than such agreements assumed, assumed and assigned, or rejected in accordance with the terms of any Sale Order.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within 30 days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date (the "Rejection Damages Claims Bar Date"). **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Wind-Down Debtors, the Estates, the Liquidating Trust (if any), the Purchasers, or their respective property without the need for any objection by the Wind-Down Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied and released, notwithstanding anything in a Proof of Claim to the contrary, unless otherwise ordered by the Bankruptcy Court.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan or such other treatment as agreed to by the Wind-Down Debtors and the Holder of such Claim.

C.      *Insurance Policies.*

Except as otherwise provided in this Plan, nothing in the Plan, the Confirmation Order, the Plan Administrator Agreement, or the Liquidating Trust Agreement, alters the rights and obligations of the Debtors (and their Estates) and the Debtors' insurers (and third-party claims administrators) under the Insurance Policies or modifies the coverage or benefits provided thereunder, or the terms and conditions thereof, or diminishes or impairs the enforceability of the Insurance Policies. In addition, on and after the Effective Date and subject to the terms and conditions of the D&O Liability Insurance Policies, all officers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of the D&O Liability Insurance Policies in effect or purchased as of the Effective Date for the full term of such policy, regardless of whether such officers, directors, agents, and/or employees remain in such positions on or after the Effective Date, in each case, to the extent set forth in such policies. Notwithstanding anything herein to the contrary, the Debtors or Wind-Down Debtors, as applicable, shall retain the ability to supplement such D&O Liability

50

71306/0001-53355255v12

Insurance Policies as the Debtors or Wind-Down Debtors deem necessary, including by purchasing any tail coverage or tail policies.

Upon the Effective Date, each of the Insurance Policies shall be assumed by the Debtors on behalf of the applicable Debtor and assigned to the Wind-Down Debtors (or a Wind-Down Debtor identified as first named insured or counterparty thereto) effective as of the Effective Date, pursuant to sections 105, 365 and 1123 of the Bankruptcy Code, and coverage for defense and indemnity under any D&O Liability Insurance Policies shall remain available to all individuals within the definition of "Insured" in any such policies, subject to the terms and conditions of such D&O Liability Insurance Policies.  For the avoidance of doubt, this section shall not apply to any obligations as to any equity owner of any of the Debtors in its capacity as such, but this section shall only apply to any representatives or appointees of such equity owner if they are the Debtors' current or former officers, directors, individual managers, members, partners, supervisors, agents, or employees, in each case in their capacities as such.

The automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article VIII.F hereof, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (a) claimants with valid direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims; (b) Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court: (i) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, (ii) claims where an order has been entered by this Bankruptcy Court granting a claimant relief from the automatic stay or the injunction set forth in Article VIII.F hereof to proceed with its claim; and (iii) all costs in relation to each of the foregoing; and (c) the Insurers to cancel any Insurance Policies, and take other actions relating thereto (including effectuating a setoff), in each case in accordance with the terms of the Insurance Policies and/or applicable non-bankruptcy law.  Nothing in Article VIII.F of the Plan or any corresponding paragraph of the Confirmation Order requires, precludes and/or prohibits Insurers to or from administering, handling, defending, settling and/or paying claims covered by any Insurance Policies in accordance with and subject to the terms and conditions of such Insurance Policies and/or applicable non-bankruptcy law.

D.     *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Wind-Down Debtors, as applicable, under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Wind-Down Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

71306/0001-53355255v12

*E.*     *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

*F.*     *Reservation of Rights.*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases, the Schedule of Rejected Executory Contracts and Unexpired Leases, or any other exhibit, schedule or annex, nor anything contained in the Plan or Plan Supplement, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Wind-Down Debtors have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Wind-Down Debtors, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease under the Plan.

*G.*     *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

*A.*     *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan or the Confirmation Order, on the Effective Date (or if a Claim is not an Allowed Claim or on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), or as soon as is reasonably practicable thereafter, each Holder of an Allowed Claim (as applicable) shall receive the full amount of the distributions that the Plan provides for Allowed Claims (as applicable) in the applicable Class.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have

71306/0001-53355255v12

been completed as of the required date.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.      *Disbursing Agent.*

All distributions under the Plan shall be made by the Disbursing Agent on the Effective Date or at such other time as provided for herein.  The Debtors and the Disbursing Agent, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

C.      *Rights and Powers of the Disbursing Agent.*

1.   Powers of the Disbursing Agent.

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan and the Confirmation Order;  (b) make all distributions contemplated hereby;  (c) employ professionals to represent it with respect to its responsibilities (in accordance with the Wind-Down Budget); and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or the Confirmation Order, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof; *provided*, *however*, that the Debtors or the Wind-Down Debtors, as applicable, shall maintain the Claims Register.

2.   Expenses Incurred on or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out of pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent (a) on behalf of the Wind-Down Debtors, shall be paid in Cash by the Wind-Down Debtors in accordance with the Wind-Down Budget, and (b) on behalf of the Liquidating Trustee, shall be paid in Cash by the Liquidating Trustee and shall constitute Liquidating Trust Expenses.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.   Record Date for Distributions.

On the Distribution Record Date, (i) the Claims Register and (ii) the loan registers maintained by each of the Agents, respectively, shall each be deemed closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  If a Claim is transferred 20 or fewer days before the Distribution Record Date, distributions shall be made to the transferee only to the extent practical and, in any event, only if

53

the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.  Delivery of Distributions.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided* that the manner of such distributions shall be determined at the discretion of the Disbursing Agent; *provided*, *further*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.  Distributions to Holders of DIP Claims, Allowed First Lien Claims, and Allowed Second Lien Claims shall be consistent with the DIP Order and the Prepetition Loan Documents.

3.  Minimum Distributions.

Notwithstanding any other provision of the Plan, the Disbursing Agent will not be required to make distributions of Cash less than $250 in value, and each such Claim to which this limitation applies shall be forever barred pursuant to Article VII from asserting that Claim against the Debtors or their respective property.

4.  Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder of an Allowed Claim (as applicable) is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Wind-Down Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim or Interest of any Holder related to such property or interest in property shall be discharged and forever barred.  The Wind-Down Debtors, the Disbursing Agent, and the Plan Administrator shall have no obligation to attempt to locate a Holder of an Allowed Claim other than by reviewing the Debtors' books and records and the filings on the docket of the Chapter 11 Cases.

E.  *Manner of Payment.*

Any distributions of Cash to the Holders of the applicable Allowed Claims under the Plan shall be made by the Disbursing Agent on behalf of the applicable Debtor or Wind-Down Debtor.  At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise set forth in the Plan Supplement.

F.  *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Liquidating Trustee or Plan Administrator, as applicable, shall comply with all tax withholding and reporting requirements

54

imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, any applicable withholding or reporting agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Liquidating Trustee and Plan Administrator, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

G.    *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to the remainder of the Claims, including any Claims for accrued but unpaid interest.

H.    *No Postpetition or Default Interest on Claims.*

Unless otherwise specifically provided for in the Plan, the Confirmation Order, or the DIP Orders, or required by applicable bankruptcy and non-bankruptcy law, (a) postpetition and/or default interest shall not accrue or be paid on any Claims, and (b) no Holder of a Claim shall be entitled to (i) interest accruing on or after the Petition Date on any such Claim or (ii) interest at the contract default rate, as applicable. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claims, if and when such Disputed Claim becomes an Allowed Claim.

I.    *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal (National Edition)* as of 5:00 p.m., prevailing Eastern Time, on the Petition Date.

J.    *Setoffs and Recoupment.*

Except as expressly provided in the Plan, the Plan Administrator or Liquidating Trustee (as applicable) may, pursuant to section 553 of the Bankruptcy Code, applicable bankruptcy and/or non-bankruptcy law, set off and/or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that a Wind-Down Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment (other than for the DIP Claims held by the DIP Lenders, a First Lien Claim held by the First Lien Lenders, a Second Lien Claim held by the Second Lien Lenders or a Prepetition Deficiency Claim held by any Prepetition Secured Party) is either (i) agreed in amount among

71306/0001-53355255v12

the relevant Wind-Down Debtor(s) and Holder of the Allowed Claim or (ii) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided* that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Wind-Down Debtor or its successor of any and all claims, rights, and Causes of Action that such Wind-Down Debtor or its successor may possess against the applicable Holder.

K.       *No Double Payment of Claims.*

To the extent that a Claim is Allowed against more than one Debtor's Estate, there shall be only a single recovery on account of that Allowed Claim, but the Holder of an Allowed Claim against more than one Debtor may recover distributions from all co-obligor Debtors' Estates until the Holder has received payment in full on the Allowed Claims. No Holder of an Allowed Claim shall be entitled to receive more than payment in full of its Allowed Claim, and each Claim shall be administered and treated in the manner provided by the Plan only until payment in full on that Allowed Claim.

L.       *Satisfaction of Claims.*

Notwithstanding anything to the contrary herein, in the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules, the Debtors, the Wind-Down Debtors, the Plan Administrator, or the Claims and Noticing Agent, as applicable, shall adjust the Claims Register to reflect the adjustment or expungement, as applicable, of any and all Claims that are duplicative or have been satisfied or amended and superseded without further order of the Bankruptcy Court prior to making distributions, if any, to General Unsecured Creditors entitled to payment in Article III.B.6. herein.

M.       *Claims Paid or Payable by Third Parties.*

1.       Claims Paid by Third Parties.

The Debtors, Wind-Down Debtors, Liquidating Trustee, and Plan Administrator, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor, Wind-Down Debtor, or Liquidating Trust (as applicable) provided that the Debtors, Wind-Down Debtors, or Liquidating Trust (as applicable), shall provide notice of such reduction to the Holder of such Claim. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor, a Wind-Down Debtor, or the Liquidating Trust (as applicable) on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the applicable Debtor, Wind-Down Debtor, or the Liquidating Trustee to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor, Wind-Down Debtor, or the Liquidating Trust annualized interest at the Federal Judgment Rate on such amount owed for each Business

71306/0001-53355255v12

Day after the 14-day grace period specified above until the amount is repaid.  Notwithstanding anything to the contrary herein, this Article VI.M.1 shall not apply to payments received by the Holders of Allowed DIP Claims, Holders of Allowed First Lien Claims, or Holders of Allowed Second Lien Claims, which shall be subject to the Prepetition Intercreditor Agreement); *provided however,* that for the avoidance of doubt, claims paid by third-parties from any Collateral in satisfaction or partial satisfaction of Allowed DIP Claims, Allowed First Lien Claims, or Allowed Second Lien Claims, shall reduce such claims by the amount of such payments (or the Deemed DIP Paydown Amount).

2.   Claims Payable by Insurers.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy.  To the extent that one or more of the Debtors' Insurers agrees to pay in full or in part a Claim, then immediately upon such Insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided* that notice of such satisfaction is served by the Debtors or the Wind-Down Debtors, as applicable, on the Holder of such Claim.

3.   Applicability of Insurance Policies.

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims covered by Insurance Policies shall be in accordance with the provisions of any applicable Insurance Policy.   Nothing contained in the Plan shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including Insurers under any Insurance Policies, nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any rights or defenses, including coverage defenses, held by such Insurers.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

*A.*    *Allowance of Claims and Interests.*

After the Effective Date, the Wind-Down Debtors, the Plan Administrator, or Liquidating Trustee, as applicable, shall have and retain any and all rights and defenses the Debtors had with respect to any Claim or Interest immediately before the Effective Date.  The Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law.

Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by the Plan or a Final Order, is not considered Allowed and shall be expunged without further action by the Debtors, the Wind-Down Debtors, the Plan Administrator, or the Liquidating Trustee, as applicable, and without further notice to any party or action, approval, or order of the Bankruptcy Court.

71306/0001-53355255v12

*B.*    *Claims and Interests Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, after the Effective Date, (a)(i) the Liquidating Trustee shall have the authority to File, withdraw, or litigate to judgment, objections to Filed General Unsecured Claims that are not Allowed; and (ii) the Plan Administrator shall have the authority to File, withdraw, or litigate to judgment objections to all Administrative Claims, First Lien Claims, Second Lien Claims, Priority Tax Claims, Other Priority Claims, and Secured Claims; *provided* that the Plan Administrator and the Liquidating Trustee, as applicable, shall have the authority to settle or compromise any respective Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court and (b) the Plan Administrator and the Liquidating Trustee, as applicable, shall administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Plan Administrator, Wind-Down Debtors, and Liquidating Trustee (as applicable) shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Retained Causes of Action.

The Debtors up to the Effective Date, and the Wind-Down Debtors, Plan Administrator, or Liquidating Trustee (as applicable) on and after the Effective Date, shall be responsible and obligated to maintain the Claims Register, and to administer and adjust the Claims Register in regard to allowance of Claims.  The Debtors, the Wind-Down Debtors, Plan Administrator, or Liquidating Trustee, as applicable, may maintain the retention of the Claims and Noticing Agent and develop a budget for compensation of the Claims and Noticing Agent.

*C.*    *Estimation of Claims and Interests.*

Before, on, or after the Effective Date, the Debtors, the Wind-Down Debtors, the Plan Administrator, or the Liquidating Trustee, as applicable, may (but is not required to) at any time request that the Bankruptcy Court estimate the amount of any Claim, in each case solely to the extent that they have authority to File objections to such Claim under this Plan, pursuant to applicable Law, including, without limitation, pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party in interest previously has objected to such Disputed Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under sections 157 and 1334 of the Judicial Code to estimate any such Disputed Claim or Interest, including during the litigation of any objection to any Disputed Claim or Interest or during the pendency of any appeal relating to such objection.  Notwithstanding any provision to the contrary in the Plan, a Disputed Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any

58

contingent, unliquidated or Disputed Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Wind-Down Debtors, Plan Administrator, or Liquidating Trustee (as applicable) may elect to pursue any supplemental proceedings to object to the allowance of, or any ultimate distribution on, such Claim or Interest.

D.      *Adjustment to Claims or Interests Without Objection.*

Any Claim or Interest that has been paid or satisfied may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Wind-Down Debtors, Plan Administrator, or Liquidating Trustee (as applicable) after notice to the Holder of such Claim (or such Holder's known counsel), but without any further notice to or action, order or approval of the Bankruptcy Court; *provided*, that the Wind-Down Debtors, Plan Administrator, or Liquidating Trustee (as applicable) shall file a notice of satisfaction or other pleading evidencing such satisfactions and serve the same on the Holders of such Claims, or seek an order of the Bankruptcy Court with respect to the same, upon notice to the Holders of such Claim or Interest.

E.      *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the later of (i) 180 days after the Effective Date and (ii) such other period of limitation as may be specifically fixed by a Final Order of the Bankruptcy Court, subject to a notice and objection period, for objecting to such Claims (the "Claims Objection Deadline").  For the avoidance of doubt, the period of limitation set forth in this Article VII.E shall not apply to Administrative Claims.

F.      *Disallowance of Claims.*

Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Wind-Down Debtors or Liquidating Trust, as applicable.  All Proofs of Claim Filed on account of an indemnification obligation to a director, manager, officer, or employee shall automatically be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is honored or reaffirmed pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims,**

59

**unless such late Claim has been deemed timely Filed by a Final Order of the Bankruptcy Court.**

G.      *Amendments to Proofs of Claims or Interests.*

On or after the applicable bar date, a Proof of Claim or Interest may not be Filed or amended without the prior written authorization of the Bankruptcy Court or the applicable Debtor, Wind-Down Debtor, or Liquidating Trustee, as applicable.  Absent such authorization, any new or amended Claim or Interest Filed shall be deemed disallowed in full and expunged without any further action.

H.      *No Distributions Pending Allowance.*

Notwithstanding any other provision of the Plan or the Confirmation Order, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

I.      *Distributions After Allowance.*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions, if any, shall be made to the Holder of such Allowed Claim or Allowed Interest (as applicable) in accordance with the provisions of the Plan and the Confirmation Order.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution, if any, to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution, if any, that was made on account of the undisputed portion of such Claim or Interest, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy Law or as otherwise provided in Article III.B of the Plan.

J.      *Single Satisfaction of Claims.*

Holders of Allowed Claims may assert such Claims against the applicable Debtor or Debtors obligated with respect to such Claims, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against the applicable Debtor(s) based upon the full Allowed amount of such Claims.  Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100 percent of the underlying Allowed Claim plus applicable interest, if any.

K.      *Claims Not Receiving a Distribution.*

Notwithstanding anything in the Plan to the contrary, the Debtors and the Wind-Down Debtors, as applicable, will not undertake any claims resolution process, steps related thereto or any action with respect to claims that are classified in a Class for which there will be no distribution.

71306/0001-53355255v12

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

*A.      Settlement, Compromise, and Release of Claims and Interests.*

To the greatest extent permissible under the Bankruptcy Code or applicable non-bankruptcy law, and in consideration of the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith release, compromise, and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. To the greatest extent permissible under the Bankruptcy Code or applicable non-bankruptcy law, the Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and controversies, and entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests. Subject to Article VI hereof, all distributions, if any, made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

*B.      Release of Liens.*

**Except as otherwise provided in the Plan, the Plan Supplement, Confirmation Order or any contract, instrument, release, or other agreement or document created pursuant to the Plan or the Confirmation Order, immediately following the making of all distributions to be made to an applicable Holder pursuant to the Plan, and, in the case of a Secured Claim, in satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Debtors or the Wind-Down Debtors, as applicable, to evidence the release of such Lien and/or security interest, including the execution, delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.**

**If any Holder of a Secured Claim that has been satisfied in full pursuant to the Plan or the Confirmation Order, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as reasonably practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Wind-Down Debtors that are necessary or desirable to record or effectuate the cancelation and/or**

extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Wind-Down Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.

C.      *Releases by the Debtors.*

Except as otherwise specifically provided herein or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, upon entry of the Confirmation Order, as of the Effective Date, each Released Party is, and is deemed, hereby fully, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by each and all of the Debtors and their Estates, the Wind-Down Debtors and their Estates, and the Liquidating Trustee, in each case on behalf of themselves and their respective successors, assigns, and representatives from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, including any derivative claims asserted or assertable on behalf of any of the Liquidating Trustee, the Debtors, the Wind-Down Debtors, and their Estates, that the Liquidating Trustee, the Debtors, the Wind-Down Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively), or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against or Interest in a Debtor or other Entity could have asserted on behalf of the Debtors based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or the Wind-Down Debtors and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors or the Wind-Down Debtors, intercompany transactions between or among the Debtors or between the Debtors and their non-Debtor Affiliates, the First Lien Credit Agreement, the Second Lien Credit Agreement, the DIP Facility, the DIP Facility Documents, the Disclosure Statement Order, the Confirmation Order, the Sale Order(s), the Sale Transactions, the TSA, the Sale and Settlement Order, the First Day Pleadings, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Prepetition Loan Documents, or any other definitive document, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action to be attached as an exhibit to the Plan Supplement, or (iii) any Claims or Causes of Action

62

71306/0001-53355255v12

arising out of, or related to, any act or omission of a Released Party that is determined by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct (it being agreed that any Released Parties' consideration, approval, or receipt of any distribution did not arise from or relate to actual fraud, gross negligence, or willful misconduct).

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in this Article VIII.C, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that such release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for a hearing; and (6) a bar to any of the Debtors, the Wind-Down Debtors, the Liquidating Trustee, or the Debtors' or Wind-Down Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

D.     *Releases by Holders of Claims and Interests.*

Except as otherwise specifically provided in the Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, upon entry of the Confirmation Order, as of the Effective Date, each Releasing Party is, and is deemed to have, hereby fully, conclusively, absolutely, unconditionally, irrevocably and forever released each Debtor, Wind-Down Debtor, the Liquidating Trustee, and Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Liquidating Trustee, the Debtors, the Wind-Down Debtors, and their Estates (as applicable) that such Entity would have been legally entitled to assert in their own right (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof or otherwise), the purchase, sale, or rescission of any security of the Debtors or the Wind-Down Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor or the Wind-Down Debtors and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among the Debtors or between the Debtors and their non-Debtor Affiliates, the First Lien Credit Agreement, the Second Lien Credit Agreement, the DIP Facility, the DIP Facility Documents, the Disclosure Statement Order, the Confirmation Order, the Sale Order(s), the Sale Transactions, the TSA, the Sale and Settlement Order, the First Day Pleadings, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Prepetition Loan Documents, any other definitive document, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, the

63

**Plan, the Plan Supplement, the Sale Transactions, any other definitive document, any of the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (ii) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action to be attached as an exhibit to the Plan Supplement, or (iii) any Claims or Causes of Action arising out of, or related to, any act or omission of a Released Party that is determined by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct (it being agreed that any Released Parties' consideration, approval, or receipt of any distribution did not arise from or relate to actual fraud, gross negligence, or willful misconduct).**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in this Article VIII.D, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that such releases are: (1) consensual; (2) essential to the Confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the releases provided in this Article VIII.D; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for a hearing; and (8) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the releases provided in this Article VIII.D.**

*E.     Exculpation.*

**Except as otherwise expressly provided in the Plan or the Confirmation Order, to the fullest extent permitted by applicable law and solely to the extent such acts or omissions occurred between the Petition Date and the Effective Date, no Exculpated Party shall have or incur any liability for, and each Exculpated Party is released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, the Plan Supplement, any other Definitive Document, or any contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Sale Transactions, any other Definitive Document, the filing of the Chapter 11 Cases, the participation in the DIP Facility, the Sale and Settlement Order, the pursuit of the Sale Transactions, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of**

64

property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon Consummation shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

*F.      Injunction.*

In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors. Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors. To the fullest extent permissible under applicable law, except as otherwise specifically provided in this Plan or for obligations issued or required to be paid pursuant to this Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims against or Interests in the Debtors and/or Wind-Down Debtors or Causes of Action, in each case that have been released or are subject to exculpation pursuant to the Plan, shall be precluded and are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Exculpated Parties (including the Debtors and Wind-Down Debtors) or the Released Parties, and any successors, assigns or representatives of such Persons or Entities: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action; (d) asserting any right of setoff or subrogation, of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, or Causes of Action released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Wind-Down Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, or Article VIII.E hereof without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to

65

**bring such Claim or Cause of Action against any such Debtor, Wind-Down Debtor, Exculpated Party, or Released Party.**

**Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.F.**

G.      *Protections Against Discriminatory Treatment.*

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Debtors, or another Entity with whom the Debtors have been associated, solely because the Debtors have been debtors under chapter 11 of the Bankruptcy Code, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or have not paid a debt that is dischargeable in the Chapter 11 Cases.

H.      *Document Retention.*

On and after the Effective Date, the Wind-Down Debtors, the Debtors, the Plan Administrator, or Liquidating Trustee, as applicable, may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by each, subject to the applicable provisions of the Plan Administrator Agreement or Liquidating Trust Agreement.

I.      *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date:  (i) such Claim has been adjudicated as non-contingent; or (ii) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

71306/0001-53355255v12

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE**

A.      *Conditions Precedent to the Effective Date.*

It shall be a condition precedent to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX hereof:

a.   The Sale Transactions shall have been implemented and/or consummated, as applicable, in all material respects;

b.   the Bankruptcy Court shall have entered an order approving the Disclosure Statement, in form and substance acceptable to the Required DIP Lenders;

c.   the Bankruptcy Court shall have entered the Confirmation Order, Filed in a manner consistent in all material respects with the Plan, and acceptable to the Required DIP Lenders and such order shall have become a Final Order;

d.   the DIP Facility shall be in full force and effect, and there shall be no defaults under the DIP Facility Documents continuing unless waived by the Required DIP Lenders in accordance with the terms and conditions of the DIP Documents;

e.    the Plan Supplement, Plan, and all schedules, documents, supplements, and exhibits thereto, as applicable, shall be acceptable to the Required DIP Lenders and have become Filed;

f.   the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

g.   the Debtors shall have established the Administrative Claims Reserve;

h.   all professional fees and expenses of retained professionals required to be approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date into the Professional Fee Escrow Account pending approval of such fees and expenses by the Bankruptcy Court;

i.   The Debtors have funded the Wind-Down Debtor Account Amount in Cash;

j.   The Liquidating Trust shall have been established and funded with the Liquidating Trust Assets;

k.   no court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, preventing or prohibiting the consummation of the Plan; and

l.   the following documents shall be in full force and effect, and shall not have been terminated prior to the Effective Date: (a) any Sale Orders; (b) such other motions, orders, agreements, and documentation necessary or desirable to consummate and

67

71306/0001-53355255v12

document the transactions contemplated by this Plan; and (c) all other material customary documents delivered in connection with transactions of this type.

B.      *Waiver of Conditions.*

The conditions to Consummation set forth in Article IX may be waived by the Debtors, subject to the consent of the Required DIP Lenders, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

C.      *Effect of Failure of Conditions.*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims by the Debtors, any Holders, or any other Entity; (ii) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity in any respect. Notwithstanding the foregoing, the non-Consummation of the Plan shall not require or result in the voiding, rescission, reversal, or unwinding of (a) the DIP Orders, including without limitation, any releases provided therein, or (b) the Sale Transaction(s) under the Asset Purchase Agreements or the revocation of the Debtors' authority under the Sale Orders to consummate such Sale Transaction(s).

D.      *Substantial Consummation.*

"Substantial Consummation" of this Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modifications and Amendments.*

Except as otherwise specifically provided in the Plan and subject to section 1127 of the Bankruptcy Code, the Debtors reserve the right, with the consent of the Required DIP Lenders, to modify the Plan whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan; *provided*, *however*, that the Debtors or the Wind-Down Debtors, as the case may be, shall not amend or modify the Plan in a manner that adversely affects the treatment of any Class of Claims and/or Interests without resoliciting such Class of Holders of Claims or Interests.

71306/0001-53355255v12

*B.*     *Effect of Confirmation on Modifications.*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof, but before entry of the Confirmation Order, are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

*C.*     *Revocation or Withdrawal of the Plan.*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation does not occur, then:  (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan (and not assumed in connection with an Asset Purchase Agreement and pursuant to the Sale Order), and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity, including the Holders of Claims; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.     Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.     Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.     Resolve any matters related to (for the avoidance of doubt, notwithstanding whether such treatment arises under the terms of the Plan or the Sale Order):  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Claims pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and/or assigned; (c) the Debtors amending, modifying, or supplementing, after

69

the Effective Date, pursuant to Article X of the Plan, any Executory Contracts or Unexpired Leases to the Schedule of Assumed Executory Contracts and Unexpired Leases or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.  Ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5.  Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.  Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.  Adjudicate, decide, or resolve any and all matters related to sections 1141 or 1146 of the Bankruptcy Code;

8.  Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

9.  Resolve any cases, controversies, suits, or disputes that may arise in connection with the interpretation of any Sale Order;

10.  Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

11.  Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

12.  Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

13.  Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

14.  Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to the Plan;

15.  Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16.  Enter an order or final decree concluding or closing any of the Chapter 11 Cases;

71306/0001-53355255v12

17. Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

18. Adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

19. Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

20. Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

21. Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, or the Sale Orders, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

22. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

23. Hear and determine matters concerning section 1145 of the Bankruptcy Code;

24. Hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in connection with and under the Plan, including under Article VIII;

25. Hear and determine all disputes related to the Sale and Settlement Order or the TSA;

26. Hear and determine all disputes with respect to the Liquidating Trust or the Liquidating Trust Assets;

27. To recover all assets of the Debtors, property of the Estates, or Wind-Down Debtors, wherever located;

28. To consider requests for extensions of the term of the Liquidating Trust or Wind-Down Debtors as provided herein;

29. Enforce all orders previously entered by the Bankruptcy Court;

30. Hear any other matter over which the Court has jurisdiction under the Bankruptcy Code; and

31. Enter an order or final decree concluding or closing the Chapter 11 Cases.

71

**ARTICLE XII.**
**MISCELLANEOUS PROVISIONS**

A.      *Immediate Binding Effect.*

Subject to Article IX.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Debtors, the Plan Administrator, the Liquidating Trustee, any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B.      *Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, the Wind-Down Debtors, Plan Administrator, Liquidating Trustee, and all Holders of Claims or Interests receiving distributions pursuant to the Plan, and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

C.      *Reservation of Rights.*

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtors or any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors or any Debtor with respect to the Holders of Claims or Interests, unless and until the Effective Date has occurred.

D.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, Affiliate, officer, director, manager, trustee, agent, representative, attorney, beneficiaries, or guardian, if any, of each such Entity.

72

E.    *Service of Documents.*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors shall be served, including via email in addition to any other method of service, on the parties listed below:

1.  If to the Debtors:

    c/o FreshRealm, Inc.
    901 W. Linden Avenue
    Linden, New Jersey 07036
    Attn:  John Hanson, Chief Financial Officer
    E-mail: jhanson@alvarezandmarsal.com

    with copies to:

    Cole Schotz P.C.
    Court Plaza North, 25 Main Street
    Hackensack, New Jersey 07601
    Attn:  Ryan T. Jareck, Esq.
    E-mail:  rjareck@coleschotz.com

2.  If to the Required DIP Lenders:

(a)    *Counsel to BGC*
    Herbert Smith Freehills Kramer (US) LLP
    1177 Avenue of the Americas
    New York, New York 10036
    Attn: Robert T. Schmidt, Esq.
    Email: Robert.Schmidt@hsfkramer.com

    With copies to:

    Sills Cummis & Gross P.C.
    The Legal Center
    One Riverfront Drive
    Newark, New Jersey 07102
    Attn: Andrew H. Sherman, Esq.
    Email: Asherman@sillscummis.com

(b)    *Counsel to Faranord*
    Kirkland & Ellis LLP
    601 Lexington Avenue
    New York, New York 10022
    Attn: Christopher Marcus, Esq.
    Email: cmarcus@kirkland.com
    With copies to:

73

McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Attn: Jeffrey Testa, Esq.
Email: jtesta@mccarter.com

3.  If to the Committee:

Fox Rothschild LLP
49 Market Street
Morristown, New Jersey 07960
Attn: Joseph J. DiPasquale, Esq.
Email: jdipasquale@foxrothschild.com

-and-

Fox Rothschild LLP
Two Commerce Square
2001 Market Street, Suite 1700
Philadelphia, Pennsylvania 19103
Attn: Jesse M. Harris, Esq.
Email: jesseharris@foxrothschild.com

4.  If to the U.S. Trustee:

United States Department of Justice
Office of the United States
One Newark Center, Suite 2100
Newark, New Jersey 07102
Attn: Andrew R. Vara, U.S. Trustee, Regions 3& 9
Attn: Fran B. Steele, Esq. and David Gerardi, Esq.
Email: Fran.B.Steele@usdoj.gov; David.Gerardi@usdoj.gov

To be effective, all notices, requests, and demands to or upon the Debtors shall be in writing (which may be by email), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received and telephonically confirmed. After the Effective Date, the Debtors shall have authority to send a notice to Entities that continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those (i) Entities who have Filed such renewed requests; and (ii) those Entities whose rights are affected by such documents.

71306/0001-53355255v12

*F.      Term of Injunctions or Stays.*

Unless otherwise provided in this Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in this Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

*G.      Enforcement of Confirmation Order.*

On and after the Effective Date, the Debtors, the Wind-Down Debtors, Liquidating Trustee, and Plan Administrator, as applicable, shall be entitled to enforce the terms of the Confirmation Order and the Plan (which shall include, for the avoidance of doubt, the Plan Supplement).

*H.      Entire Agreement.*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

*I.      Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://restructuring.ra.kroll.com/FreshRealm.

*J.      Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to this Plan and may not be deleted or modified without the consent of the Debtors, the Wind-Down Debtors, Liquidating Trustee, or Plan Administrator, as applicable; and (iii) nonseverable and mutually dependent.

71306/0001-53355255v12

K.      *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on this Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys shall be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, neither any of such parties nor individuals nor the Wind-Debtors, Plan Administrator, or Liquidating Trustee will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on this Plan or any previous plan.

L.      *Closing of Chapter 11 Cases.*

The Plan Administrator or Liquidating Trustee, as applicable, shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 or Local Rule 3002-1, including the motion required by Local Rule 3002-1, and any applicable order necessary to close the Chapter 11 Cases. Furthermore, the Claims and Noticing Agent is authorized to destroy all paper or hardcopy records related to the Chapter 11 Cases two (2) years after the Effective Date has occurred.

M.      *Waiver or Estoppel.*

Each Holder of a Claim, Interest, or Intercompany Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim, Interest, or Intercompany Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

*[Remainder of Page Intentionally Left Blank.]*

71306/0001-53355255v12

Respectfully submitted,

Dated: July 27, 2026                        FreshRealm, Inc.
                                            on behalf of itself and all other Debtors


                                            /s/ John Hanson
                                            _____
                                            Name:     John Hanson
                                            Title:    Chief Financial Officer

71306/0001-53355255v12